FILED

2010 JAN 28  AM 10: 51

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Charles Edward Lincoln, III
1928 Fletcher Avenue
South Pasadena, California 91030
Telephone:  (512) 968-2500
Facsimile:   (561) 691-1423
charles.lincoln@rocketmail.com
Plaintiff, *in propia persona*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES (WESTERN DIVISION)

CHARLES EDWARD LINCOLN III,          §
          Plaintiff,          §
                              §
v.                            §   **CV10-00615** RGK (PJW)
                              §   Case No. _____
                              §
CALIFORNIA RECONVEYANCE CO.,  §
JP MORGAN CHASE, N.A.,        §
And all JOHN & JANE DOES 1-50 §   **TRIAL-BY-JURY DEMANDED**
          Defendants.          §
§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§

## COMPLAINT FOR QUIET TITLE

Background History and Pre-Filing Demands

Plaintiff's assignors, Dennis and Milenne DeLeon, transferred all their right, title, and interest in the property, subject of this claim, and all associated notes, contracts, and claims, to Charles Edward Lincoln, III, from whom they have now leased the subject property according to a 5 year lease.

The DeLeons realized in or about May or June of 2009 that the adjustable rate mortgage which they had taken out on the above-entitled and numbered property was extremely oppressive, probably unrepayable, and that JP Morgan Chase, N.A., had committed numerous acts of fraud, and was in so doing protected by California Laws which favored if they did not in effect insulate mendacity and

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*          - 1 -          *Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

```
1/28/2010 10:58:20 AM  Receipt #: 130714
           Cashier : KPAGE [LA 1-1]
Paid by: CHARLES E. LINCOLN
2:CV10-00615
2010-086900      5 - Civil Filing Fee(1)
Amount :                          $60.00
2:CV10-00615
2010-510000     11 - Special Fund F/F(1)
Amount :                         $190.00
2:CV10-00615
2010-086400      Filing Fee - Special(1)
Amount :                         $100.00
Check Payment : 4730 /            350.00
```

deceit from liability, so long as the mendacity and deceits conformed to certain statutory formulas. A particular disappointment to the DeLeons was their attempt to obtain a loan modification from Chase.

After several months it became obvious that the offer of a loan modification was more a cruel hoax based on manipulation of payment schedules and timetables than anything else, and that far from costing less, the modified loan would have cost more. Chase repeatedly made promise after promise, which they did not keep (in whole or in part because they lacked the power or ability to keep their illusory promises), including such simple promises as to provide complete paperwork to substantiate a modification.

In other words, Dennis and Milenne DeLeon decided that they could not and would not honor crooked obligations defined by the laws of a crooked system by participating in that system, and that they would rather not be "pretend" homeowners at nearly incalculable and inestimable total cost. The DeLeons' assignment of rights to Plaintiff CHARLES EDWARD LINCOLN, III, comports in all respects with the requirements for a valid assignment as set forth in ***Sprint Communications v. APCC Servs.***, 128 S. Ct. 2531; 171 L. Ed. 2d 424; 2008 U.S. LEXIS 5034 (U.S. 2008).

## PARTIES, JURISDICTION and LEGAL CONTENTIONS

**1.**     Comes now the Plaintiff CHARLES EDWARD LINCOLN III, as assignee of the DeLeons, with this his Complaint For Quiet Title, complaining of damages inflicted by the slander of title and conspiracy to defraud committed by JP MORGAN CHASE, N.A., and therefore seeking quiet title to real estate located in Los Angeles County, California, from JP MORGAN CHASE, N.A., by and through their so-called servicing Trustees, agents, or nominees at CALIFORNIA RECONVEYANCE COMPANY.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 2 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.**    This court has plenary jurisdiction over the present dispute and all parties pursuant to 28 U.S.C. §1331 in that the claims alleged therein arise under the laws of the United States, including but not limited to 42 U.S.C. §§1981, 1982, 1983, and 1988(a).

**3.**    This court has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiffs' federal claims and arise out of a common nucleus of related facts and legally interrelated transactions, and accordingly form part of the same legal case or controversy under Article III of the United States Constitution.

**4.**    Jurisdiction within this court specifically arises from 15 U.S.C. § 1601 et seq. ("TILA"); Regulation Z, 12 C.F.R. § 226 et seq.; Federal Trade Commission Act ("FTC Act"), and 15 U.S.C. § 1691, as well as Civil Rights Jurisdiction 28 U.S.C. §1343, 42 U.S.C. §§1981, 1982, 1983, 1988(a) and/or 42 U.S.C. §§12101 et seq (Americans with Disability Act).

**5.**    Defendant JP Morgan Chase, N.A.  is so because they are the bank claiming an interest as the originating lender's  (Washington Mutual) "assignee" and beneficiary of an unnamed and undisclosed trust or agency or nomination granted to CALIFORNIA RECONVEYANCE COMPANY, a wholly owned subsidiary of Prommis Solutions an Atlanta based Company.

**6.**    JP Morgan Chase, N.A., World headquarters is located at Manhattan, New York (specifically 270 Park Avenue Floor 12, New York, New York 10017-7924) while Defendant CALIFORNIA RECONVEYANCE COMPANY is headquartered in California. Cal-Western is a wholly owned and/or controlled subsidiary of Prommis Solutions LLC, having its headquarters in 525 East Main Street El Cajon, CA 92020.

**7.**    The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant

*Plaintiff's Original Complaint for Quiet Title*                              - 3 -                       *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*                                        *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California*                                                            *1928 Fletcher Avenue*
                                                                                                                                    *South Pasadena, California 91030*

to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S. C. § 2203 and Rule 65 of the Federal Rules of Civil Procedure and accordingly asks for such relief in a separate Application for TRO.

**8.**     Plaintiff now and accordingly assert seven causes of action against Defendants JP Morgan Chase, N.A. and CALIFORNIA RECONVEYANCE COMPANY predicated on, inter alia, purported violations of the federal Fair Debt Collections Act ("FDCA"), 15 U.S.C. § 1601 et seq. ("TILA"); Regulation Z, 12 C.F.R. § 226 et seq.; Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 1691 et seq.(Equal Credit Opportunity, in this case Age Discrimination), 42 U.S.C. §§1983, 1988(a) and 42 U.S.C. §12101 (Americans with Disability Act of 1990, ADA).

**9.**     Plaintiff also asserts derivative claims under California's Fair Debt Collection Practices Act, Ca. Civil Code § 1788(c) and (f) among others.

**10.**     In addition, this Court has jurisdiction pursuant to 28 U.S.C. §1343 (Civil Rights) insofar as Plaintiff seeks a declaratory judgment or series of three declaratory judgments pursuant to 42 U.S.C. §§1981, 1982, 1983, and 1988(a), that California Civil Code sections 2924-2924i are and ought to be declared null and void as unconstitutional impairments on the rights and obligations of contract, and as such as violations of 42 U.S.C. §§1981 and 1982 in particular, actionable under 42 U.S.C. §§1983 and 1988(a).

**11.**     California Civil Code §§2924-2924i providing "exhaustive" procedures for non-judicial foreclosure), are unconstitutional both on their face and as applied, in that the Courts of California are administering, and permitting private attorneys and trustees to administer and exercise the business of non-judicial foreclosure in such a way that the common law rights to limit collection and enforcement to "holders in due course" and other privileges inherent in the common law doctrine of "privity of contract" have been all but obliterated.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**12.** Courts in California seem particularly anxious to gloss over the "holder in due course" and "privity of contract" doctrines in non-judicial foreclosures, accepting (as U.S. District Judge Lawrence J. O'Neil did as recently as December 1, 2008) defendant servicer contentions (without any supporting law, precedent, or other authority whatsoever) such as "Defendants fault the complaint's allegation that an unnamed note holder does not possess the note in that there is no "obligation to produce originals of either the promissory note or deed of trust." ***Vargas v. Cal-Western Reconveyance Co.,*** 2008 U.S. Dist. LEXIS 100115 (E.D.CA. 2008).

**13.** This Court must now decide whether it is an unconstitutional impairment of the common law rights of contract for the California legislature and courts to nullify the common law obligation of lenders operating under the Federal Reserve system of credit and loan origination (rather than the actual lending of money owned by a "lender"), to hold, keep, and produce the original note and to limit enforcement of a contract to the actual parties or direct agents or assignees of a contract in a simple and direct chain of title.

**14.** These principal elements of contract law have always been a key requirement of the common law of contracts, and this requirement is enshrined by statute in some states such as Florida Statutes §673.3021, although even in Florida the excuses by which lost notes are re-established under Florida Statutes §673.3091 are often no more than ridiculous "the dog ate my homework"-type explanations.

**15.** The abrogation of the common law rights and obligations of contract by California statute and judicial practice is leading down a slippery slope to the abolition of private property and its replacement by an unstable society filled with transient and rootless homeless people dependent on the government for housing as a form of social welfare.

*Plaintiff's Original Complaint for Quiet Title* — 5 — *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.* *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California* *1928 Fletcher Avenue*
*South Pasadena, California 91030*

**16.**    The dream of home ownership and a stable homestead has given way to a modern socialist American ideal of adult life, Peter Pan-like, the mobile life of the young vagabond college student who flops in one rat infested hovel on a side-street two blocks from the law school one year and then moves down by the river to an equally rat infested hovel the next after moving from a jointly held suburban apartment complex rented with friends the year before that.

**17.**    Plaintiff charges that the current mortgage foreclosure and economic crisis has in part been promoted by the government as a matter of national policy to destroy or destabilize families and their residence patterns.

**18.**    The effective abandonment of the common law by the executive and judicial branches did not come about as the result of overt democratically enacted legislative modification of the law, nor pursuant to any official governmental policy of or for the public benefit, but to enable and enrich a favored group which has profited from a non-governmental financial innovation of the late 1970s-80s known as "securitization of debt", with securitized and bundled "debt" sold on the open market in complete disregard and, in fact, in flagrant violation of all common law (and Uniform Commercial Code) principles of "holder in due course" or "privity of contract".

**19.**    "Holder in due course" and "privity of contract" were key elements of common law jurisprudence specifically protected from interference by the state governments under Article I, §10, Cl. 1 of the United States Constitution, except where necessary to protect or advance a compelling governmental interest in the state's interest of self-protection or emergency exercise of the police power. Cf., e.g., ***Allied Structural Steel Co. v. Spannaus, Attorney General Of Minnesota, et al.***, 438 U.S. 234; 98 S. Ct. 2716; 57 L. Ed. 2d 727 (1978).

**20.**    Plaintiff reserves the right to amend and add additional causes of action to this complaint by regular amendment pursuant to Rule 15 of the Federal Rules of Civil

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 6 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

Procedure as may be necessary to bring all issues before the Court concerning the properties for which quiet title is sought in California.

21.   Venue is proper pursuant to 42 U.S.C. §1391(a)-(c) in the Central District of California in that the property at 1928 Fletcher Avenue, South Pasadena, California 91030, owned and subject to this dispute is located in Los Angeles County, which is included in the Western Division of the Central District of California.

22.   Furthermore, although Defendant CALIFORNIA RECONVEYANCE COMPANY gives its physical address for delivery of mail as 9200 Oakdale Avenue, Mail Stop N110612, in Chatsworth, California, or P.O. Box 9029, Temecula, CA 92589-9029, both in the Central District of California, and routinely operates throughout the State of California, being responsible for "servicing" a large number of non-judicial foreclosures pursuant to the statutes herein challenged as illegal, namely California Civil Code §§2924-2924i.

## BACKGROUND & THEORY OF THE CASE

23.   Assignors Dennis and Milenne DeLeon signed their original note regarding the subject property on November 15th 2005 in favor of Washington Mutual, N.A., which was subsequently sold to Defendant JP Morgan Chase, N.A who bought all the assets of Washington Mutual.

24.   Plaintiff Charles Edward Lincoln III accepted assignment of the DeLeon's title to the property in question (a community estate) subject to a conditional obligation to pay the mortgage to which this property was subject if he could verify that the servicing entities were actually "holders in due course" of their note, or that they were somehow or otherwise parties in privity with Washington Mutual (the original lender). He received a the property through Warranty Deed (Exhibit A) along with a Power of Attorney (Exhibit B) and an Assignment of Rights (Exhibit C).

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*
-7-
*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**25.**   Through out 2009 the original debtor, Dennis and Milenne DeLeon were talking to agents, officers, or employees of JP Morgan Chase, NA, who were supposedly working to refinance the DeLeons current mortgage, but the nearest result was a series of letters regarding a "modification" which in fact was nothing more than an adjusted payment schedule which included all interest and penalties which the DeLeons would have incurred under the original November 2005 note; the whole proposal for modification was nothing but a scam, a device to push the Plaintiff's assignors further and further into apparent arrearage or default.

**26.**   The DeLeons have constantly been told by Defendant JP Morgan Chase, N.A. and its agents, employees, and officers (significantly NOT including CALIFORNIA RECONVEYANCE COMPANY) that a loan modification was not only possible but imminent, essentially using snake-oil advertisers' gimmicks of assurance that it was all going to happen.

**27.**   Plaintiff Lincoln believes that the perpetual status of ongoing negotiations were disingenuous, and meant to distract from the Defendants' move to sell the property as seen in the Notice of Trustees Sale set for December 7th 2009 (see Exhibit D).

**28.**   The DeLeons had reason to believe that JP Morgan Chase was actively committing fraud outside of simply "leading them on" with regards to Loan Mods. The DeLeons had reason to believe that JP Morgan Chase had a questionable assignation of title and may not be legally able to foreclose. The DeLeons accordingly sent out a demand letter (see Demand Letter attached as Exhibit E) in an effort to follow the chain of title to double check Chase's interest in their note.

**29.**   Plaintiff Lincoln, after carefully studying the DeLeons loan documents allege that the contract of trust/agency/or nomination between JP Morgan Chase, N.A. and CALIFORNIA RECONVEYANCE COMPANY provides that CALIFORNIA RECONVEYANCE COMPANY  must pay JP Morgan Chase, N.A. n regardless of

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*
- 8 -
*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

whether or not CALIFORNIA RECONVEYANCE COMPANY  receives any money from "serviced" alleged debtors/de facto promissors/allegedly de jure obligors such as the Plaintiff, and that the JP Morgan Chase, N.A. is entitled, under this same contract, to receive payments even after it has sold and securitized (i.e. transferred both legal title and beneficial interest of the Plaintiff's notes to unknown third-party investors).

**30.**   Plaintiffs further alleges that there is, accordingly, no privity of contract between any of the parties to this lawsuit, and that the Defendants are engaged in fraud to the extent that they describe, "hold themselves out to be", or otherwise act as if they were "holders in due course" of the Plaintiff's notes.

**31.**   In a Notice of Default and Election to Sell Under Deed of Trust dated August 12, 2009 Defendant CALIFORNIA RECONVEYANCE COMPANY noticed the Plaintiff's assignors and tenants Dennis L. DeLeon and Milenne M. DeLeon, husband and wife that a Trustee's sale would occur not sooner than 90 days from August 13th, 2009. They provided no indication or evidence that this non-judicial foreclosure was accompanied by any proof of claim against the property owned by the Plaintiffs. Nor did they specify who the actual beneficiary of sale was (see "Notice of Sale", attached as **Exhibit D**).

**32.**   Such a sale is legally defective under the letter of California Law, but, in violation of 42 U.S.C. §§1981 and 1982, but according to California Civil Code §2924-2924i implemented as a matter of custom, practice, and policy having the force and effect of law California State Courts must uphold the validity of contracts without regard to privity, fraud, lack of interest, and every other defect, and allow foreclosures by non-holders of notes who neither represent true holders nor are otherwise in privity with true holders, full sale and transfer of the title to and beneficial use of all notes having been previously transferred.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**33.** The Defendants in this case have not stated whether the note is lost, stolen, or sold, but the implication of the Defendants course of conduct is that the commercial paper which constitutes the fundamental media of exchange in the mortgage business: promissory notes, although required to be accepted as "Deposits in Cash" by 12 U.S.C. §1813l, are in fact utterly unimportant and worthless or at least irrelevant and unnecessary to establishing a debt collector's standing as either the holder in due course or his representative.

**34.** This slippery tale of the mysteriously lost or destroyed note, repeated thousands of times all over California, is entitled to no more credibility than those offered by truant schoolboys involving dogs who eat homework or great aunts who always die during finals or when term papers are due, but it is used successfully in perhaps 80-90% of all California Mortgage Foreclosures and accordingly in violation of the Uniform Commercial Code §§ 3-301, 3-309, which leads all of these lying Mortgage company to proceed to foreclose non-judicially, without right under law.

**35.** All promissors (including JP Morgan Chase, N.A.) implicitly, if not explicitly, promised or affirmed that they would follow the common law, as well as the statutory law, guaranteeing to each contracting party promisee to comport themselves by conduct in full compliance with all the guarantees and protections of common law, including but not limited to the doctrines of "holder in due course" and "privity of contract" and these promises are lawful and constitutional, unlike the effective abrogation of these rights and obligations by the "liar's and swindler's statutory immunity" offered by California Civil Code §§2924-2924i.

**COUNT I: CAL. CIVIL CODE §§2924-2924i are UNCONSTITUTIONAL**

**36.** As allowed by Rule 10(b)-(c) of the Federal Rules, Plaintiff realleges and incorporates ¶¶ 1-25 above by reference as if fully copies and restated herein below.

*Plaintiff's Original Complaint for Quiet Title*   - 10 -   *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*   *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California*   *1928 Fletcher Avenue*
*South Pasadena, California 91030*

**37.** California Civil Code §§2924-2924-I can accurately be so called (a "liar's or swindler's statutory immunity") because it does not alter the common law at all, but rather creates an irrebuttable presumption that the conditions of the common law have been met merely be a recitation of the properly phrased claims to that effect, no matter how fraudulent the claim.

**38.** JP Morgan Chase, acting in concert with other Banks and Servicers such as but not limited to CALIFORNIA RECONVEYANCE COMPANY, is implementing the following customs, practices and policies having the force of law in California which effect a systematic deprivation of the fundamental constitutional rights of the Plaintiffs, and thousands of other plaintiffs whose identity is unknown:

**39.** Conducting non-judicial foreclosure sales during negotiations for loan modification serves to defraud the mortgagor (borrower) and operates in defeasance of the implied covenant of good faith and fair dealing;

**40.** Conducting non-judicial foreclosure sales during the pendency of material disputes, including actual pending litigation concerning title and standing to collect debts under color of laws which effectively preclude contests to title & standing;

**41.** Initiating eviction proceedings in California Superior Court without any reasonable prior notice of sale of property, as the primary and preferred means of informing occupants/mortgagors or their assignees, of the existence of sales;

**42.** Imposing and conducting a system of judicial evictions in California Superior Courts after non-judicial foreclosures, all of which are "rigged" in the sense of outcomes predetermined in favor of evicting parties, in such a manner that title disputes concerning the right to foreclose or evict from properties has been all but abolished; California stands almost alone in the United States of America in not giving disputes over title legal superiority and priority to disputes over possession, and

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

\- 11 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

in fact in all but obliterating the rights of parties to contest claims to title relating to the right to conduct a non-judicial foreclosure;

**43.**  Imposing and conducting a system of judicial evictions in California Superior Courts after non-judicial foreclosures which interfere with and impair the common law and statutory obligations of contract in violation of the Constitution, and which denies to certain classes of people, namely mortgagors, the equal rights to

**44.**  inherit, purchase, lease, sell, hold, and convey real and personal property (within the meaning of 42 U.S.C. §1982) and

**45.**  to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property (within the meaning of 42 U.S.C. §1981(a)).

**46.**  For purposes of this complaint, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship (within the meaning of 42 U.S.C. §1981(b);

**47.**  For purposes of this complaint, Plaintiff contends that 42 U.S.C. §1981, and 42 U.S.C. §1982 are the key federal civil rights statutes because they together outline and guarantee general, federally secured and specified, equal civil rights in the making of contracts and ownership of property; Plaintiff submits that these statutes, regardless of their Reconstruction-era origins, should be construed as "color blind" under modern Supreme Court interpretations of civil rights so that equal rights to make and enforce contracts, to sue, be parties, and give evidence concerning the rights arising therefrom, including the right to own property, should both be applied and construed as though they did not contain the nearly identical phrase, "as is enjoyed by white citizens" and/or "as is enjoyed by the white citizens thereof;" Plaintiff submits and contends that the law must be applied in fact to guarantee civil

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*          - 12 -          *Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

rights in the making and enforcement of contracts and the ownership of property to all citizens, and not merely that non-white citizens may not be denied their civil rights "any more" than such rights are denied to white citizens, which is a possible construction of civil rights jurisprudence prior to 1989

**48.**    Plaintiff submits, in brief, that the situation in the California Superior Courts relating to the enforcement and application of non-judicial foreclosures by judicial evictions has reached a crisis of epidemic or even pandemic proportions, especially in the several counties together grouped in the Central District of California, and

**49.**    that the civil rights of mortgagors (such as Plaintiff's assignors Dennis & Milenne DeLeon) to "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" are being severely infringed under color of California law and in particular the judicial norms which apply to the conduct and resolution of Superior Court cases challenging the standing of certain servicers or entities claiming standing to foreclose on real-estate notes, such that the very right "inherit, purchase, lease, sell, hold, and convey real and personal property" is being infringed or even curtained.

**50.**    In other words, the laws of the State of California as applied, in particular §2924 of the Code of Civil Procedure and related statutes, are being so applied and enforced as to effectively abolish both private property and the rights to full and equal benefits of the laws for the security of persons and property.

**51.**    Although the present Plaintiff is himself both white Anglo-Saxon and Protestant, he knows of no racial elements to this epidemic of civil rights violations, and alleges that the class which should be certified in this case will include tens if not hundreds of thousands of African Americans, Hispanic Surname Americans (such as his assignors Dennis and Milenne DeLeon), Asian Americans, and Native Americans

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 13 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

as well as Anglos, and accordingly, and submits that the essence of 42 U.S.C. §§1981, 1982, can be best preserved and applied without the qualifying language "as is enjoyed by white citizens;" in essence, from now and into the future, the law of civil rights in the United States should be truly "color blind" and the enforcement and utilization of this country's majesterial laws relating to equality under the law should not be denied to white people, although the Courts seem often to use this pretext.

**52.** Accordingly, this United States District Court should apply to 42 U.S.C. §§1981 and 1982 the principles articulated by the United States Supreme Court repeatedly over the past twenty years that all government racial classifications (including Federal classifications) must be analyzed by a reviewing court under strict scrutiny in the modern line of equal protection cases going back to the 1989 decision in ***Richmond v. Croson. Adarand Constructors, Inc. v. Peña,*** 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), ***Johnson v. California,*** 336 F.3d 1117, 2003 Daily Journal D.A.R. 8295, (9th Cir., Jul 28, 2003)***, Grutter v. Bollinger***, 539 U.S. 306, 123 S.Ct. 2325, 156 L.Ed.2d 304, 2003 Daily Journal D.A.R. 6800, (U.S., Jun 23, 2003)***, Johnson v. California***, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949, 2005 Daily Journal D.A.R. 2118, (U.S., Feb 23, 2005), ***City of Richmond v. J.A. Croson Co.***, 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854, (U.S.Va., Jan 23, 1989).

**53.** Plaintiff Lincoln herein submits and suggests that the racial element of 42 U.S.C. §1981 has largely if not entirely outlived its usefulness, and that if the word "white" (before citizens) in 42 U.S.C. §1981 is replaced (at least conceptually) by the word "all free, fully enfranchised", then the law will acquire new and magisterial vigor in the modern world, and promote a more just and equitable society, especially in the context of the last seven years, in which more and more people (of all racial origins) have with increasing frequency and ferocity, been denied their equal right to

*Plaintiff's Original Complaint for Quiet Title*   - 14 -   *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*                    *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California*          *1928 Fletcher Avenue*
                                                          *South Pasadena, California 91030*

access to the courts and to the formal and substantive rights and procedures essential to ensure true due process of law.

**54.** The Plaintiff in this case is, as noted, White Anglo-Saxon Protestant Suburbanite by racial and class categorization, but this classification itself is antique and pointless. The classes involved in this case are the mortgagors vs. the mortgagees, those who use and enjoy private property against those who wish to monopolize it, and on another level, real property holders vs. false debt collectors.

**COUNT II: Civil Rights Declaratory Judgment (42 U.S.C. §1983, 1988(a))**

**55.** Plaintiff realleges ¶¶ 1-54 as if fully copied and restated herein below (Rule 10).

**56.** Plaintiff Lincoln alleges that it is the custom, practice, and policy of Defendant CALIFORNIA RECONVEYANCE COMPANY and other servicers, trustees, and their other attorneys similarly situated (Defendants Doe 1-10), as well as the Sheriff of Los Angeles County, and the Judges and Clerks of the Superior Court of Los Angeles County to violate 42 U.S.C. §§1981-1982 by administering and imposing a judicial regime wherein mortgagors are always, in all cases dispossessed by forcible detainers, often with no prior notice of sale or transfer of interest in their properties.

**57.** The enforced consistent pro-mortgagee results of Los Angeles County evictions can be demonstrated statistically and by narrative evidence to show that there is no equality of access to the courts, nor any equal right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" all under color of law in violation of the First, Fifth, Ninth and Fourteenth Amendments to the Constitution.

**58.** Wherefore, Plaintiff prays that this Court declare and adjudge the nature of the California Superior Court custom, practice or policy concerning the resolution of non-judicial foreclosures and judicial evictions, as well as the allied and related policy

*Plaintiff's Original Complaint for Quiet Title* — 15 — *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*                                    *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California*                                    *1928 Fletcher Avenue*
*South Pasadena, California 91030*

of the California County Clerks and Sheriff's department in administering and enforcing this policy, and that thereupon the Court

**59.** Declare and adjudge that these customs, practices, and policies administered and enforced in the California Courts are wholly unconstitutional and offensive to principles of due process of law, the right to petition, and the rights of the people secured by 42 U.S.C. §1981-1982, as well as the 5th and 14th amendments, such that:

**60.** All such policies should be declared unconstitutional, null and void and all decisions reached and transfers of title thereunder during the past year likewise be declared null and void and finally that

**61.** Defendants JP Morgan Chase, N.A., California Reconveyance, and all of their agents or employees be now and forever enjoined from continuing or perpetuating these customs, practices, and policies in the California Courts or elsewhere.

**62.** Wherefore, Plaintiff prays for his costs of suit incurred in obtaining these declaratory judgments, and that a permanent injunction shall issue against all the Defendants, their employees, assigns, officers, and successors in interest never again to enforce unconstitutional non-judicial foreclosures and judicial evictions in violation of 42 U.S.C. §§1981, 1982.

## COUNT III: Declaratory Judgment re: Breach of Good Faith & Fair dealing in Modification Negotiations with JP Morgan Chase Bank, N.A.

**63.** Plaintiff realleges ¶¶ 1-62 as if fully copied and restated herein below, Rule 10.

**64.** Plaintiff Lincoln alleges that his assignors Dennis and Milenne DeLeon they were engaged in negotiations to modify their mortgages at the time that their homes were sold and eviction proceedings initiated, and that Defendant JP Morgan Chase Bank, N.A., had agreed to extend these modifications in lieu of regular tender of payment under the loan.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 16 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**65.**   Plaintiff Lincoln further alleges that Dennis and Milenne DeLeon and JP Morgan Chase Bank had specifically agreed to provide an actual basis for restructuring and modification of their loans, but this never happened.

**66.**   Plaintiff Lincoln further alleges that he and his assignors reasonably feared and continue to fear, based on the experience of others similarly situated that JP Morgan Chase might conduct a secret sales of their property while this litigation or other negotiations are in full swing and pending, without any notice or disclosure to them or their Assignee Plaintiff.

**67.**   Plaintiff Lincoln alleges that the conduct of JP Morgan Chase Bank, N.A., was outrageous and unconscionable, and constituted such complete derogation from and violation of the implied covenant of good faith and fair dealing under California Common and Statutory Law that the sales effected for their respective properties are and ought to be declared nullities without any legal force or effect, so that any evictions resulting from these foreclosures was illegal and therefore subject to claims for all actual, consequential, direct, derivative, and special damages.

**68.**   WHEREFORE, Plaintiff Lincoln prays for declaratory judgment in his favor and against Defendant JP Morgan Chase Bank and CALIFORNIA RECONVEYANCE COMPANY, to nullify the Deed of Trust, and all other documents underlying the August 12 notice of sale of the property concerned and

**69.**   Plaintiff further prays that each of the banks, servicers, and attorneys who conducted these sales be enjoined and assessed all of the Plaintiff's actual damages, and that judgment be entered enjoined precluding any and all future sales by CALIFORNIA RECONVEYANCE COMPANY or any party taking thereunder from JP MORGAN CHASE, N.A., or CALIFORNIA RECONVEYANCE CO.

**70.**   In addition, because of its actual and superior professional knowledge, Plaintiff prays that Defendant CALIFORNIA RECONVEYANCE COMPANY and all of its

*Plaintiff's Original Complaint for Quiet Title*                    - 17 -
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

attorneys, agents, employees, officers, and trustees be assessed treble their actual damages and costs of suit as punitive and exemplary damages, to punish this "Servicer's" outrageous conduct and serve as an example to deter others similarly situated from engaging in similar conduct.

### COUNT IV: California Civil Code Section 1714.10 is UNCONSTITUTIONAL

**71.**   Plaintiffs reallege ¶¶ 1-70 as if fully recopied and restated herein below.

**72.**   The California law providing that

> No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorneys' representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civili conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.

violates 42 U.S.C. §1981 in that it creates special classes of privileged citizenry and denies both equal protection of the law and due process of law to certain classes of citizens (non-lawyers).

**73.**   This Court should declare and adjudge that California Civil Code §1714.10 is facially unconstitutional under the First, Fifth, Ninth, and Fourteenth Amendments to the Constitution as a denial of the right to Petition, denial of due process, infringement upon the rights reserved to the people, and a violation of equal protection of laws by creating a privileged class.

**74.**   The creation of this privileged class of attorneys also and further violates both Article 1, §9, Cl. 8 & §10, Cl. 1, of the United States Constitution by effectively creating a title of nobility, as well as violating the privileges and immunities clause of Article IV, §1, Cl. 2 by creating for California lawyers a special privilege and immunity not available to citizens of any other of the several states.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 18 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**75.**   No state can grant to any of its citizens special privileges or immunities which discriminate against citizens of other states or create an inequality between citizens of one state and those of another, but Cal Civil Code §1714.10 has this precise effect.

**76.**   WHEREFORE, Plaintiff prays that California Civil Code §1714.10 be declared unconstitutional, null and void for all purposes and applications, and will grant them all their reasonable costs of suit as well as permitting them to sue all John and Jane Doe attorneys their actual damages resulting from their collusion and conspiracy with other Defendants and non-Defendants, including Superior Court Judges who may be immune from suit.

### COUNT V: Cal. Civil Code §1714.10 DOES NOT IMMUNIZE
### JP MORGAN CHASE, CAL WESTERN NOR THIER ATTORNEYS

**77.**   Plaintiffs reallege ¶¶ 1-76 as if fully copied and restated herein below.

**78.**   Plaintiffs allege that CALIFORNIA RECONVEYANCE COMPANY and its attorneys, trustees, and agents (including several Defendants John or Jane Doe) are partners and investors in the real properties seized in eviction proceedings.

**79.**   In particular, CALIFORNIA RECONVEYANCE COMPANY and some of its attorneys share office space and Plaintiff alleges that CALIFORNIA RECONVEYANCE COMPANY is acting not merely in the course of representation of Trust beneficiaries, but for its own benefit and the gain of its attorneys and investors as potential buyers of the property in question.

**80.**   There can not, even potentially, under the real circumstances of California non-judicial foreclosure, be any innocent, good faith, arms length transactions involving the sale the subject property because the buyers would not and cannot be bona fide purchasers for value---they would not and cannot not have been bona fide purchasers in any event because they took from CALIFORNIA RECONVEYANCE COMPANY without either asking or knowing not to ask for proof of Wells Fargo's

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 19 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

status as "holder in due course" which is merely "conditional" in the sense that Wells Fargo prove its entitlement to collect so much as one dime on the subject property at 1928 Fletcher.

**81.** Plaintiff further alleges that any rule, even if not facially unconstitutional, is unconstitutional as applied according to a state judicial norm "which requires a judicial determination of reasonable probability of success prior to permitting the filing of an action against an attorney based on a claim of civil conspiracy with a client" because such a rule (as articulated by Defendants) constitutes a per se denial of equal access to the courts due process and of equal access to the courts and legal processes in violation of 42 U.S.C. §1981.

**82.** Access to discovery of facts is a key element of due process of law and equal access to the Courts as discovery procedures are often critical to the determination of the accuracy or inaccuracy of any legal complaint, suit at law, or equitable action.

**83.** Plaintiff alleges that CALIFORNIA RECONVEYANCE COMPANY' relationship and that of its Attorneys, with the Judges of the Los Angeles County and other California Countys' Superior courts is so close and intimate that there exists a continuing and ongoing agreement and understanding between them in derogation of due process of law and equal protection of persons and property, in violation of 42 U.S.C. §§1981, 1982 and also of the 5th and 14th Amendments.

**84.** WHEREFORE, Plaintiff prays that (in the alternative to the previous count) even if California Civil Code §1714.10 is not unconstitutional on its face, it is either unconstitutional as applied to CALIFORNIA RECONVEYANCE COMPANY and its attorneys or simply does not, as a matter of fact or law, apply to CALIFORNIA RECONVEYANCE COMPANY and its attorneys at all, and Plaintiffs prays that this Court will so declare and adjudge, granting them all their costs of suit, in addition to the full and unfettered right to recover from CALIFORNIA

*Plaintiff's Original Complaint for Quiet Title* - 20 -  *Charles Edward Lincoln III*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*  *Plaintiff, pro se*
*et al., U.S. District Court, Central District of California*  *1928 Fletcher Avenue*
*South Pasadena, California 91030*

RECONVEYANCE COMPANY and its attorneys John and Jane doe, including all of Plaintiff's and his assignors' damages for civil conspiracy with other Defendants and non-defendants, including collusion or conspiracy with Superior Court Judges who may be otherwise immunized from suit.

## COUNT VI: Cal. Civil Code §2924 Unconstitutionally Impairs Contract

**85.**   Plaintiff realleges ¶¶ 1-84 as if fully copied and restated herein below.

**86.**   California Civil Code §2924 is expressly designed to impair the obligations and rights of and arising under contracts relating to mortgages and promissory notes, and to create grossly favored and disfavored classes of property owners based in large part on willingness to lie and nothing else; any statute designed to create unequal classes of litigants in Court directly violates 42 U.S.C. §1981, and California Civil Code §2924 irrationally and unfairly grants certain classes of individuals superior rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" and thereby also creates unequal classes of people with regard to the rights "to inherit, purchase, lease, sell, hold, and convey real and personal property."

**87.**   Expressly and "on its face" California Civil Code §2924 provides in part:

> (c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

**88.**   This express provision facially violates equal rights and irrationally denies equal access to the courts (guaranteed by 42 U.S.C. §1981-1982) to sue and give evidence to mortgagees whose properties were the victims of fraudulent foreclosures

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 21 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

(foreclosures instituted or prosecuted by any party, principal, witness, or attorney willing either knowingly or negligently to present false recitations regarding compliance with statutory provisions regarding service and delivery of notices).

**89.** Neither CALIFORNIA RECONVEYANCE COMPANY nor any of their agents or employees actually complied with all or in fact any of the statutorily mandated procedural requirements of noticing default or notice of sale prior to setting the December 7, 2009 sale of 1928 Fletcher Avenue in South Pasadena, subject of this suit.

**90.** For a law to provide that mere recitation in a deed of certain facts will constitute ***irrebuttable and conclusive evidence*** which acts to bar or determine the outcome of any judicial proceeding does itself constitute a statutory denial of due process of law and a discriminatory disadvantage to those who are the victims of fraudulent foreclosures (foreclosure by parties, principals, witnesses and attorneys who make false statements of fact, such as claims to lawful right to fore, such as, Plaintiff's evidence will show, are nearly all the foreclosures in California today, because in fact most foreclosures are conducted by parties without contractual entitlement to do so).

**91.** Plaintiff submits that the non-judicial foreclosure laws of the state of California, especially but not limited to Civil Code §2924(c) quoted above, expressly and unequivocally constitute (1) an impairment of the right to make and enforce contracts and to give evidence for the security of persons and property, (2) deny due process of law in the making and enforcing of contracts and to give evidence regarding the same for the security of persons and property, (3) deny equal protection of the law in the making and enforcing of contracts and to give evidence regarding the same for protection of persons and of property.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 22 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**92.**   WHEREFORE, Plaintiff prays and request that this Court declare and adjudge that California Civil Code §2924(c) is unconstitutional on its face, and as such that all foreclosure sales against any of the Plaintiff or persons similarly situated in the State of California are null and void and that Plaintiff and persons similarly situated are entitled to a rescission of sale and restoration of their property.

**93.**   WHEREFORE, additionally, Plaintiff prays and requests that this court declare and adjudge that all elements of contractual provisions, and of compliance with contractual and statutory requirements for the proof of compliance, are equally subject to challenge and the presentation of evidence by any party to a contract or person legitimately interested in the subject matter of the contract.

**94.**   No non-judicial foreclosure should be upheld judicially if the truth of the underlying facts, including the status of a buyer as a bona fide purchaser for value, is disputed or contested by competent witnesses presenting competent evidence, and accordingly no presumptions which create either the certainty or even the strong likelihoods that one side or another of any contractual dispute should prevail should ever withstand challenge under 42 U.S.C. §§1981, 1982, or the Fifth or Fourteenth Amendments to the Constitution of the United State, when (read as color blind) statutes and constitutional provisions affording equal protection of the laws to all citizens and legal residents of the United States of America.

## COUNT VII: CALIFORNIA CIVIL CODE §2924 IS ALSO UNCONSTITUTIONAL AS APPLIED

**95.**   Plaintiff realleges ¶¶ 1-94 as if fully copied and restated herein below.

**96.**   Defendants, but especially Defendant CALIFORNIA RECONVEYANCE COMPANY in it capacity as Servicer implementing expressForeclosure business, all depend upon the California Courts' unconstitutional glosses and applications of and upon California Civil Code §2924 in addition to the statute's facial infringement

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*
                              - 23 -
*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

upon the equal rights of all persons to make and enforce contracts, to sue and present evidence.

**97.** As an example of the customary and practical application of 2924 in the Courts, Plaintiff cites the California case of ***Homestead Savings v. Darmiento***, 230 Cal.App.3d 424, 436, 437 (1991) which held that:

> Where the evidence establishes that the trustee conveys title to a bona fide purchaser and the trustee's deed contains the language specified in §2924, the sale is not voidable.

And

> The purchaser's title is free and clear of all rights of the trustor or anyone claiming under or through the trustor, including liens that have attached to the property after the execution of the foreclosed deed of trust.

**98.** These above-and-forgoing judicially formulated normative applications of §2924 violate, respectively, the same equal right to make and enforce contracts and to sue and give evidence for the security of persons and property secured by 42 U.S.C. §1981 and the equal rights of all persons to purchase, lease, sell, hold, and convey real and personal property guaranteed by 42 U.S.C. §1982.

**99.** Another California case which shows the unconstitutional application of 2924 is ***Napue v. Gor-Mey West, Inc.***, 175 Cal. App.2d 608, 620-621, 220 Cal.Rptr. 799 (Cal.App. 2ⁿᵈ Dist., Div. 3, 1985) as a judicially articulated norm having the force and effect of law:

> Section 2924 of the Civil Code creates a conclusive presumption in favor of a bona fide purchaser at a trustee's sale that if the trustee's deed recites that all requirements of law have been complied with regarding the mailing, posting, publication, or personal delivery of the notice of default and the notice of sale, the recital is conclusive. In other words, failure to comply with the notice requirements is a ground to cancel the sale only as against a party who is not a bona fide purchaser. A sale to a bona fide purchaser is not voidable.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 24 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**100.** Conclusive presumptions which render certain transactions UNILATERALLY non-voidable deny equal access to the courts to sue and give evidence and further deny the equal right to purchase, sell, or convey property in plain and express violation of 42 U.S.C. §§1981, 1982.

**101.** The entire California non-judicial foreclosure system implemented with conclusive presumptions which cannot be rebutted either in forcible detainer or any other judicial proceedings inevitable tends to the absolute destruction of private property and the equal rights of all people to own and convey property, to make contracts, and to invoke the protection of the courts in so doing.

**102.** In short, California Civil Code §2924, both on its face and as applied, is a constitutional nightmare and a statute transitional to corporate-governmental communism where citizens only hold property at the sufferance of corporate-governmental financial services and property-holding conglomerates such as the banking and mortgage servicing defendants in this case.

**103.** WHEREFORE, Plaintiff Charles Edward Lincoln prays that this Court will strike down California Civil Code §2924 as constituting an unconstitutional abridgement and impairment of the right to contract, own, and convey property, all in violation of 42 U.S.C. §§1981, 1982, as well as the U.S. Constitution's Fifth and Fourteenth Amendments and the Article I prohibition on impairment of contracts.

**104.** Plaintiff Charles Edward Lincoln, as proper assignee of all the rights, title, and interest of Dennis and Milenne DeLeon, is entitled to void or nullify both their note to JP Morgan Chase, N.A. and their contract, based on JP Morgan Chase, N.A. 's utter failure to conform to the common strictures of contract in good faith and fair dealing, showing for causes of action as follows:

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 25 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

## COUNT VIII: INJUNCTIVE RELIEF

**105.**  Plaintiff realleges and incorporates ¶¶1-104 as allowed by R. 10(b)-(c), FRCP.

**106.**  The Defendants CALIFORNIA RECONVEYANCE COMPANY's wrongful sale and Unlawful detainer must be stayed to prevent great and irreparable injury to the plaintiff should the eviction occur as scheduled.

**107.**  Plaintiffs request the court for a Restraining Order enjoining and restraining the named Defendants from foreclosure on plaintiffs on the subject property pursuant to **California Business and Professions Code Section 17203** to enjoin and restrain the Defendants from continuing to engage in Deceptive and Unfair Business Trade Practices, as more fully set forth in this Complaint.

**108.**  The Deceptive and Unfair Business Trade Practices engaged in by Defendants include, but are not necessarily limited to, continuous promises to modify or restructure the payments of the loan and the promise of relief through arbitration.

**109.**  Until such time as Defendant and the mortgage loan servicer provide a detailed accounting of the history and handling of the note, including all sales, pools, and securitizations which have been made or taken place, and analysis of the amounts it contends is due and owing on the note and deed of trust at issue, and provides a breakdown of the amounts due and owing on the note and deed of trust, Plaintiff requests the entry of an injunction to enjoin Defendant's actions pursuant to California Business and Professions Code Section 17203.

**110.**  Plaintiff will be irreparably injured if the parties are not enjoined in that he will suffer complete loss of his unique real property, which is not capable of being duplicated, loss of all of equity, loss of the right of possession and to live in their property, including the right of quiet enjoyment, would be uprooted and have their family uprooted from their community, and would suffer great personal injury, including defamation of his credit, the infliction of emotional distress upon Plaintiffs

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 26 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

which has already under duress due to their collective medical conditions, may well become homeless, and suffers other damages personal to Plaintiffs.

**111.** Any potential harm to Defendants is slight when compared to the damage to be suffered by Plaintiffs and the equities balance and tip heavily in favor of Plaintiffs.

**112.** Plaintiff has no other adequate remedy at law.

**113.** Plaintiff seeks entry of a preliminary injunction on a ex parte basis without notice to the named Defendant in that, were the defendants given advance notice of these proceedings they would in all likelihood seek to accelerate the damage Plaintiff seeks to apprehend. Plaintiff has a good likelihood of prevailing on the merits of claim due to the nature and extent of Defendant's violations.

**114.** Plaintiff requests that the restraining Order be issued without bond as Plaintiff is unable to afford a bond of any kind or type. Defendants will not be irreparably injured by the issuance of a stay given the present economic climate and the obscene profits defendants already have made.

## COUNT IX: ACCOUNTING RELIEF

**115.** Plaintiffs realleges and incorporates ¶¶1-114 by reference under Rule 10(b)-(c).

**116.** A controversy exists between Plaintiff Charles Edward Lincoln and Defendant JP Morgan Chase, N.A. with respect to the correct amount of money that is actually owed by Plaintiff as assignee of the DeLeons to Defendants. Defendants have repeatedly refused to provide an accurate account statement or allow Plaintiff's representatives to audit defendant books and records as they relate to accounting.

**117.** Plaintiff alleges that accounting should include a submission of the Original Note that the Defendants should possess standing and status either as "holders in due course" or as directly authorized agents of the true holder in due course with sufficient direct access to and privity of contract and ongoing relationship with such holder as to name him/her/it and produce the commercial paper/original

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*
- 27 -
*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

(monetized) promissory note accordingly.

**118.**   Plaintiff contests that without the privity of contract or original note the sum will forever and indefinitely be disputed because without said note Plaintiffs believe that the Defendants have no right to collections of any kind.

**119.**   As a result the correct amount of money due and owing from Plaintiff to Defendants remains in dispute and cannot be determined without an accounting and a submission of evidence.

**120.**   Therefore Plaintiff demands in this litigation that Defendants make available its books and records (only as they relate to the alleged loans made to Plaintiff's assignors Dennis and Milenne DeLeon) in order that Plaintiff may have a qualified representative audit the books, records, federal reserve collateral and borrower in custody agreements to determine the accounting of the financial transaction(s) made regarding the note or the securitization of said note.

## COUNT X: UNFAIR DEBT COLLECTION PRACTICES & PREDATORY LENDING

**121.**   Plaintiff realleges and incorporates ¶¶1-120 as allowed by R. 10(b)-(c), FRCP.

**122.**   Plaintiff alleges upon information and belief that the Defendants acting jointly and severally, and each of them, in taking the actions aforementioned independently, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including not limited to Civil Code 1788(3) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V. §§ 1692 *et seq,* and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601-2617.

**123.**   The Court should determine whether or not the defendants have violated state securities laws as seen by California Financial Code §33560(c) and 22340 is applicable where there is fraudulent selling of eligible notes when in fact they are not selling them, merely the collection rights under the servicing agreement.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 28 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**124.**  A judicial determination is appropriate to determine the plaintiff's rights and duties with regards to the property loans and/or foreclosure. A declaration of rights and duties of the parties by the court is necessary to determine the actual status and validity of the loan and any rights, duties, and/or obligations to be enforced.

**125.**  Plaintiff is informed and believes his alleged grounds for cancellation of the mortgage documents and deeds of trust for cause as stated herein and specifically as the character and relationship of the parties, the existence of the ground for recovery, including fraud, false representations, or impossibility of performance, defendants' failure to perform, and the inadequacy of a remedy at law.

**126.**  The court should declare as a matter of equity that laches applies to bar the alleged debt collector, or, since the trustee failed to comply with the Fair Debt Collection Practices Act in order to proceed to trustee sale of the property, the trustee is equitably estopped from taking any further action against the subject property.

**127.**  There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower. (As of June 26, 2008 California Attorney General and Illinois Attorney General have filed Law Suit against Countrywide Home loans.)

**128.**  Since predatory lenders are constantly developing new techniques to take advantage of borrowers, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include engaging in aggressive, high pressure and/or misleading tactics. Defendants, and each of them, engaged in this kind of conduct toward Plaintiff Lincoln.

**129.**  Defendants and each of them is directly or though agents or employees entities or persons actively involved in the extension of credit as said term is defined under

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 29 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

the Truth in Lending Statute (TILA). Said Defendants subject to the requirements of the Truth in Lending Act have violated the requirements of the said act in that among other things:

a. They have failed to validate and otherwise make a full accounting and required disclosures as to the true finance charges and fees.

b. They have improperly retained funds belonging to Plaintiff in amounts to be determined.

c. To disclose the status of the ownership of said loans.

**130.** Plaintiff further alleges that these violations are such as to require rescission and or cancellation of the loan herein and return of all funds received by Defendants from the original borrowers who assigned their rights to Plaintiff Lincoln through deeding the property, a POA and an Assignment of Rights to Notes and Obligations.

**131.** Plaintiff alleges that Defendants and each of them are such as to fall within the requirements of the Real Estate Settlement Procedures Act (RESPA)., and placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees, excess charges and amounts in excess of what would have been lawfully earned.

**132.** In addition to the requirements of RESPA, LENDERS acted either individually or jointly as "Servicers" as that term is used within the act and either individually or jointly violated the requirements of 26 USCA § 2605 (b) in that the servicing contract or duties there under were transferred or hypothecated with out required notice.

**133.** Plaintiff Charles Edward Lincoln alleges that these violations are such as to require rescission and/or cancellation of his assignor's loan herein and return either to him as trustee or to his assignors directly of all funds received by Defendants JP Morgan Chase or its predecessor Washington Mutual from the original borrowers who assigned their rights to Plaintiff Charles Edward Lincoln III.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**134.**  Plaintiff further alleges that he is entitled to compensatory damages and an amount to be determined at trial-by-jury, for which demand is here made.

## COUNT XI:  DECLARATORY JUDGMENT: NO VALID CONTRACT EXISTS

**135.**  Plaintiff realleges and incorporates ¶¶1-134 as allowed by R. 10(b)-(c), FRCP.

**136.**  Contracts can be absolute or relative nullities, void or voidable, depending on the violation of certain precepts of common and statutory law.  Plaintiff contends that his mortgage contract was merely voidable on the day they signed in, owing to circumstances and transactions intended but concealed from them by the Defendants, but that after securitization of their note and transfer of same either to third party investors as an individual note or (more likely) in a pool of securitized notes, Defendants' claims against Plaintiff in particular were absolute nullities, void, if not *ab initio*, then void *ab hora delictae*, (void from the time of offense) the tort or delictual act in question being the sale or securitization of their note without either notice or acknowledgment that this breach of contract and transfer of legal contractual title and interest had taken place.

**137.**  Under California Civil Code §§1549-1550 *et seq.,* a contract is an "agreement to do or not to do a certain thing" which requires mutual promises of detrimental undertaking between at least two parties; the detrimental undertakings are the bargained for exchange known as "consideration."

**138.**  Plaintiff alleges that his obligation to JP Morgan Chase, N.A. constituted and was treated as an asset to JP Morgan Chase, N.A. providing only detriment from the Plaintiff, incurring no detriment on their part nor without any benefit flowing from JP Morgan Chase, N.A. and therefore not constituting valid consideration within the meaning of California Civil Code §1605.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 31 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**139.**   A contract concerning real property is not binding on either party unless its obligations are mutual and reciprocal. ***Prather v. Vasquez,*** 162 Cal. App. 2d 198, 327 P.2d 963 (1958).

**140.**   An unenforceable contract as between the two original parties transfers no right to title or interest in said property; Dennis DeLeon and Milenne DeLeon's contract with Washington Mutual lacked bilateral detriment and mutuality and is therefore now unenforceable by the new "assignee" or "buyer", Defendant JP Morgan Chase, N.A., because (a) WAMU's promises were illusory and did not actually bind or arise from WAMU or Chase at all.

**141.**   Where one party elicits promises from another but neither promises nor undertakes any action detrimental to itself, that party has not "contracted" with the other within the understanding of the common law, because "mutual detriment" was said to be the "glue" that invested both parties in the success of the joint venture.

**142.**   The Originator Washington Mutual nor Defendant JP Morgan Chase, N.A. neither promised nor did transfer its own money to the DeLeons but the money of an unidentified third party (possibly "Fannie Mae" or "Freddie Mac").

**143.**   Whereas in the Deed of Trust (see Exhibit F), tendered either by Washington Mutual, it does not state that Washington Mutual was the lawful owner of the money it was delivering to Dennis or Milenne DeLeon, nor even that the money was advanced against the credit of countrywide, nor any other indication of detrimental action promised or undertaken by JPMorgan Chase, N.A., as the apparent new holder in due course.

**144.**   Plaintiff alleges and will show, pursuant to §§1614-1615 of the California Civil Code, that Washington Mutual provided nothing of any value to the DeLeons, and now JP Morgan Chase, N.A., cannot show that it promised to transfer or did in fact transfer anything actually belonging to or possessed by JP Morgan Chase, N.A. to

*Plaintiff's Original Complaint for Quiet Title*
**CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.**
**et al., U.S. District Court, Central District of California**

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

the Plaintiff; wherefore, no valid encumbrance was created by the Deed of Trust or Mortgage Contract between Dennis L. DeLeon and Milenne M. DeLeon and Countrywide or the DeLeons and JP Morgan Chase, N.A., despite the existence of a written instrument which creates a rebuttable presumption of consideration under California law.

**145.** In short, the "loan" document does not indicate or even substantially suggest that Washington Mutual and subsequently Defendant JP Morgan Chase, N.A. never actually took any action detrimental to itself, but the purpose of the written instrument was to confirm and specify that the DeLeons and now the Plaintiff, by way of assignation of right, had given up things of value, to their own detriment, and would be required to give up more things of value, while Washington Mutual promised nothing, Plaintiff alleges that Washington Mutual in fact did nothing (except to collect payments) and JP Morgan Chase, N.A. is simply following suit.

**146.** This is standard mortgage finance industry practice, but that fact that it is common practice, does not mean that common practice satisfies the California common or statutory law of contractual viability because the consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. ***Prather v. Vasquez, supra.***

**147.** A mortgage is originated after a broker or "originating institution" receives a series of promises from a "borrower"; these promises take the form of a mortgage contract and a negotiable instrument known as a "promissory note."

**148.** The originator typically neither promises nor undertakes any action detrimental to itself, while soliciting and receiving a large number of promises and actions detrimental to the note grantor or borrower.

**149.** A promissory note is securitized by a transfer of the "borrower's" or grantor's note into a bundle of similar notes, group ranked and rated by FICO scores, date,

*Plaintiff's Original Complaint for Quiet Title*
**CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.**
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

location, and value of property, into a Mortgage-Backed Equity or Collateral Backed Obligation (MBE or CBO).

**150.** Once a promissory note is transferred into a securitized bundle, the originator or initial lender is no longer "holder in due course" of said note as a matter of law, and is no longer in privity with the "borrower" or original grantor.

**151.** Washington Mutual originated the securitized DeLeon mortgage and note and in fact transferred legal and beneficial interest in that note to an unknown party, before Defendant JP Morgan Chase bought WAMU. They are making money hand over fist and simply want more when in fact the Loan is effectively paid and some poor Swiss banker is left wringing his hands across the ocean looking for the security he supposedly bought in to.

**152.** Wherefore and accordingly, Plaintiffs pray first that this Court will declare that the original contract between Dennis DeLeon and Milenne DeLeon was unsupported by any detrimental promises or performance on behalf of either Washington Mutual or now JP Morgan Chase, N.A., pursuant to mortgage finance industry and custom, and in additionally or in the alternative that this Court will declare and adjudge that Washington Mutual having securitized the mortgage, was no longer the holder in due course of the DeLeon's note and had no right title or interest in the enforcement or collection of that note.

**153.** Wherefore and accordingly, Plaintiff Charles Edward Lincoln III prays that this Court will declare and adjudge that no valid contract exists or ever existed between Dennis DeLeon and Milenne DeLeon and JP Morgan Chase, N.A., and that quiet title should now be awarded accordingly to him as the assignee of the DeLeon's rights with Power of Attorney.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 34 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT XII: FRAUD OR NEGLIGENT MISREPRESENTATION: CALIFORNIA RECONVEYANCE COMPANY KNEW OR SHOULD HAVE KNOWN

**154.** Plaintiff realleges paragraphs ¶¶1-153 of this Complaint and incorporates the same by reference as if fully copied and restated herein below.

**155.** Plaintiff Lincoln alleges that, in fact, CALIFORNIA RECONVEYANCE COMPANY could not possibly have acted in good faith within the meaning of California Civil Code §2924(b), because the contractual terms recited even in the deed of trust, are so one-sided and devoid of any obligation to perform any act on the part of Washington Mutual that real estate professionals knew or should have known that they were in fact participating in and facilitating a fraud.

**156.** Also the underlying concerns surrounding mortgages in this Country is the product of YEARS of questionable practices and policies that have been litigated since the existence of MERS in early 2000.

**157.** Plaintiff alleges that Defendant JP Morgan Chase, N.A., in so acting with this case and with respect to many other mortgage or trust deed security instruments engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on properties when they do not, in fact, have the right to do so, knowing the property owners affected do not have the knowledge and means to contest the right of said Defendants to do so.

**158.** California Civil Code §§1614 and 2924 afford any legal immunity or protection to fraudulent devices in mortgage finance, those provisions of the California Civil Code should be declared unconstitutional impairments on the obligations of contract forbidden to the States and the Federal Government under the Constitution of the United States of America.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 35 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

## COUNT XIII: QUIET TITLE TO
## 1928 Fletcher Avenue, South Pasadena, California 91030

**159.**   Plaintiff Charles Edward Lincoln, III, realleges paragraphs ¶¶ 1-92 of this Complaint and incorporates the material allegations and legal contentions of the same by reference as if fully copied and restated herein below.

**160.**   Plaintiff now sues for quiet title to 1928 Fletcher Avenue, South Pasadena, California 91030 pursuant to the California Action to Quiet Title Statute contained in Cal. Code Civ. Proc. §760.010-§765.020.

**161.**   As authorized by Cal. Code Civ. Proc. §760.020, Plaintiffs assert this claim to establish their title to 9265 Linden Ave. against the adverse claims of JP Morgan Chase, N.A., its Trustee CALIFORNIA RECONVEYANCE COMPANY, and all Jane and John Does that may or may not have a supposed interest in the title to the DeLeon homestead and marital estate.

**162.**   Plaintiff defines Jane and John Does as anyone who may have any supposed interest in Title. Plaintiff believes that, given the current state of this economy (which is rife with fraud) that there could be other fraudulent parties, outside of Cal-Western and JP Morgan Chase, N.A., that may assert ownership. Plaintiff, though wary of fraud, welcome the appearance of the true Original Note Holder and also assign the title of John and Jane Does to any TRUE holder of the note, whether they be HSBC or some Swiss bank in Zurich.

**163.**   Jurisdiction and Venue are proper pursuant to §§760.040-769.050 because 9265 Linden Ave. the principal property in question for which quiet title is sought, is located within the County of the United States District Court for the Central District of California.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 36 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**164.**   Plaintiff will file a ***lis pendens*** as required by §761.010 with the County Clerk of LA County. Pursuant to §761.020, Plaintiffs identify the principal property as 1928 Fletcher Avenue, South Pasadena, California 91030, being a:

> **LOT 29 OF THE WEST TRACT, IN THE CITY OF SOUTH PASSADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 166 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

**165.**   Plaintiff Charles Edward Lincoln III ask and pray for relief that this Court to grant quiet title to the Plaintiff, because JP Morgan Chase, N.A.'s encumbrance on the subject property entirely depends on a contract, which was either void *ab initio* or voidable by Plaintiff as assignees and transferese (successor in interest) to Dennis DeLeon and Milenne DeLeon for the simple reasons that (a) Washington Mutual undertook not to assume and accept no detriment to itself nor any entity under its control, and there was accordingly no mutuality of consideration, (b) even if Washington Mutual were a bona fide contracting party on origination, after securitization of the DeLeon's note, Washington Mutual surrendered its status as holder in due course of the DeLeon's note, and ceased to have any privity of contract with Dennis DeLeon and Milenne DeLeon., or their successors in interest whatsoever.  And the same can certainly be said of the current mortgagor of interest and Defendant JP Morgan Chase, N.A.

**166.**   To this end, Plaintiff ask this Court to devise a means of publishing or effectively noticing the purchasers of their securitized mortgage note to appear and answer this complaint or be forever barred from doing so, even if the John Does or Jane Does or Corporations who are the actual holder in due course of Dennis DeLeon and Milenne DeLeon's note reside or are incorporated or do business abroad.

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 37 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

**167.** Plaintiff reserves the right to amend this Complaint for Quiet Title to conform with California law before any final determination of the legal sufficiency of this Complaint.

**168.** Pursuant to §764.010, Plaintiff prays that the Court will hold a hearing to examine into and determine Plaintiff's Claims against all of the Defendants, and that upon Final Trial-by-Jury, demand for which is hereby made and tendered, that the Court will award Plaintiff Lincoln quiet title to his property, the subject of this lawsuit, ordering that all encumbrances and liens, including the Deed of Trust filed by or on behalf of Defendants CHASE Bank and Cal-Western be ordered stricken and removed from the public property records of California, or else expunged and marked as VOID if otherwise required to remain in the public property records of each relevant county.

**169.** WHEREFORE, both the involved officers, directors, employees, and agents of JP MORGAN CHASE, N.A., who offered the false and fraudulent Mortgage Modification proposal to Assignors Dennis and Milenne DeLeon, including but not limited to CALIFORNIA RECONVEYANCE COMPANY and all its officers, directors, and employees, knows or should known that JP Morgan Chase, N.A., no longer had legal right, title, nor any equitable or beneficial interest in the enforcement of the DeLeon's note, and should be both temporarily and permanently enjoined from proceeding against 1928 Fletcher Avenue, South Pasadena CA 91030.

## TRIAL-BY-JURY

**170.** Plaintiff demands a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact which may be triable as a matter of controlling case law, and Plaintiff demand an advisory jury on all other matters to the extent permitted by law, with appropriate instructions distinguishing the advisory from the deciding issues presented to the jury for resolution.

*Plaintiff's Original Complaint for Quiet Title*   - 38 -
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

Plaintiff Charles Edward Lincoln III prays that this Court will find his Complaint sufficient to allow discovery and then to proceed to final trial-by-jury for final resolution of all questions of fact at common law as guaranteed by the 7th Amendment, 28 U.S.C. §1861, and Rules 38-39 of the Federal Rules of Civil Procedure, and that the Court will thereupon render judgment for the Plaintiff as assignee of the rights of Dennis and Milenne DeLeon, and against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and status of each party in relation to the property at 1928 Fletcher Avenue, South Pasadena, California 91030, and the interests assigned to Plaintiff in such property and the notes, transactions, and occurrences relating to the same.

Respectfully submitted,

Thursday, January 28, 2010

By:_____

Charles Edward Lincoln III, Plaintiff, ***pro se***
        1928 Fletcher Avenue,
        South Pasadena, California 91030
        Telephone: (512) 968-2500
        Facsimile: (561) 691-1423
E-Mail: charles.lincoln@rocketmail.com

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*



**EXHIBIT A:**
*"WARRANTY DEED OF*
*1828 FLECTCHER AVE. TO CHARLES LINCOLN"*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

Los Angeles County Registrar / Recorder
12400 Imperial Highway, Norwalk, CA
(800)201-8999

Revenue Collection

NORWALK

Cashier: B. EVANS

*2009113000301145*

Monday, November 30, 2009 4:50 PM

| Item(s) | Fee | Qty | Total |
|---|---|---|---|

Recorded Document Count = 1

| 20091803208 | | | |
| ADDITIONAL PAGE FEE | 3 | $9.00 | |
| BASIC RECORDING FEE | 1 | $7.00 | |
| FRAUD NOTIFICATION | 1 | $4.00 | |
| AB 1168 REDACTION FEE | 1 | $1.00 | |
| Electronic Recording Fee | 1 | $1.00 | |
| CERTIFIED COPY (FIRST PAG | 2 | $12.00 | |
| CERTIFIED COPY (ADDITIONA | 6 | $18.00 | |

Subtotal = $52.00

**Total**            **$52.00**

Customer payment(s):

Cash        $70.00
Change     ($18.00)

---

**COUNTY OF LOS ANGELES • REGISTRAR RECORDER/COUNTY CLERK**

## APPLICATION FOR REAL ESTATE RECORD          **NO REFUNDS**

☑ Norwalk        ☐ District Office

Number of Copies _X 2_        Number of Pages _X 8_
Certified Copy ☑

Title of Document — *Warranty Deed*

Book & Page/ _____
Document Number

Date of Recording _____

Name(s) _____

Property/ _____
Description

DO NOT WRITE IN THIS SPACE

11/30/09  04:50PM
2009113000301145

E516469

1565464

TOTAL:
----------------
$52.00

| NAME | *Charles Edward Lincoln, c/o Kathy Lawson* |
|---|---|
| STREET ADDRESS | *3620 Nature's Way* |
| CITY *Palm Beach Gardens* | STATE *Florida*   ZIP *33410* |

76A639R  (Rev. 3/06)

**CUSTOMER RECEIPT**



**This page is part of your document - DO NOT DISCARD**



# 20091803208



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/30/09 AT 04:52PM**

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



**200911300030145**

**00001565464**



**002420207**

**SEQ:**
**01**

**DAR - Counter (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E515469

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME  / Charles Edward Lincoln III
    c/o Kathy Larson

MAILING  2620 Nature's Way

CITY, STATE  / Palm Beach Gardens, Florida

ZIP CODE  3 3 4 1 0

11/30/2009

*20091803208*

---

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

"This is a bona fide gift and the grantor
received nothing in return, R & V 11911"

DOCUMENTARY TRANSFER TAX $ COUNTY $____ CITY $ _____
___ COMPUTED ON FULL VALUE OF PROPERTY CONVEYED
___ OR COMPUTED ON FULL VALUE LESS LIENS AND
  ENCUMBRANCES REMAINING AT TIME OF SALE
___ UNINCORPORATED AREA ___
  CITY OF:

Signature of Declarant or Agent determining tax. Firm Name

**RECORDING REQUESTED BY**
**WHEN RECORDED MAIL TAX STATEMENTS TO:**
CHARLES LINCOLN III
C/O PEYTON FREIMAN
603 ELMWOOD, # 6
AUSTIN, TEXAS, 78705

### WARRANTY DEED

Property address: 1928 Fletcher Avenue, South Pasadena, California 91030

     On this the 12th day of October, 2009, DENNIS DELEON jointly with his wife MILENNE DELEON, whose mailing address is, 1928 Fletcher Avenue, South Pasadena, California 91030 did execute this deed, conveying, delivering, granting and transferring all the legal right title, and equitable interest, without division or reservation, to Charles Edward Lincoln III, a resident of the state of Texas, with mailing address 603 Elmwood #6, Austin, TX, 78705, in the following described land, situated, lying, and being located in Los Angeles County, California to wit:

     **LOT 29 OF THE WEST TRACT, IN THE CITY OF SOUTH PASSADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 166 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

     Grantor fully guarantees, promises, and warrants to the grantee that there are no undisclosed claims, deeds, liens, encumbrances, or other liabilities associated with, relating, or attaching to, or affecting the property, subject of this transaction in any way. All claims or encumbrances, including all those which might be disputed or contingent, have been enumerated, itemized, and fully disclosed to the grantee after the grantor's diligent search of all relevant and accessible public and private records, stipulation to the conduct of which diligent search is hereby made.

**TO HAVE AND TO HOLD**, the same in fee simple forever.

     Signed and executed in Los Angeles county, California on this the 12th day of October, 2009 for ten dollars in hand and other valuable consideration.

     In witness whereof, Grantor has hereunto set Grantor's hand and seal on this 12th day of October, 2009. Signed, sealed, and delivered in our presence:

*Warranty Deed to Charles Edward Lincoln*         1

MAIL TAX STATEMENTS TO    *Dennis DeLeon*
                     *1928 Fletcher Ave., South Pasadena CA 91030*

_____
**GRANTOR, DENNIS DELEON**

_____
**GRANTOR, MILENNE DELEON**

### JURAT

Before me, on this the 12th day of October, 2009, DENNIS DELEON and Milenne Deleon appeared together before me to execute and acknowledge this document, and having been duly sworn on their oaths did acknowledge this Warranty Deed from DENNIS DELEON and Milenne Deleon to Charles Edward Lincoln III



_____
Notary Public, State of California
Los Angeles County

MARIA G. ALVAREZ
Commission # 1656639
Notary Public - California
Los Angeles County
My Comm. Expires Apr 7, 2010

_____
DENNIS DELEON
1928 Fletcher Ave.
South Pasadena California 91030

_____
MILENNE DELEON
1928 Fletcher Ave.
South Pasadena California 91030

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _los Angeles_ }

On _October 12, 2009_ before me, _Maria G Alvarez, Notary Public_,
      Date                               Here Insert Name and Title of the Officer

personally appeared _DENNIS DE LEON AND MILENE DELEON_
                                            Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**MARIA G. ALVAREZ**
**Commission # 1656639**
**Notary Public - California**
**Los Angeles County**
**My Comm. Expires Apr 7, 2010**

Place Notary Seal Above

Signature _Maria G Alvarez_
                                Signature of Notary Public

―――――――――――― **OPTIONAL** ――――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _WARRANTY DEED_

Document Date: _October 12, 2009_             Number of Pages: _2 pgs_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

**RIGHT THUMBPRINT OF SIGNER**
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

NOV  30  2009

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B:

## *"Power of Attorney to Charles E. Lincoln III"*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

# DURABLE POWER OF ATTORNEY

Pursuant to Rev. Code Wash. § 11.94.100 and also pursuant to TEXAS PROBATE CODE §§491-509, HERMAN & OLGA ALDANA grant Durable Power of Attorney, and do hereby designate and appoint CHARLES EDWARD LINCOLN III, whose phone number is 1-512-968-2500, or in Lincoln's absence or disability to PEYTON YATES FREIMAN, to act and serve as their agent and attorney-in-fact, to do everything concerning their real property and all claims or obligations arising from any contract, deed, or right incident of title to or credit there from derived, to exactly the same extent which they might lawfully and fairly do for themselves.

Specifically, Herman & Olga Aldana have assigned to Charles Edward Lincoln, III, and/or Peyton Yates Freiman all of their assignable rights, and by this Durable Power of Attorney do confirm and augment his power to cover any rights of theirs which are unassignable for any reason as a matter of law, and Herman & Olga Aldana specifically authorize Charles Edward Lincoln, III, and/or Peyton Yates Freiman, while acting as their agent or attorney in fact, to appear pro se, in propia persona, in and before any and all Courts or administrative agencies in his capacity as legal owner of their real property in and concerning all rights arising or incident thereto, including but not limited to the right to contest claims and encumbrances on their property, pursuant all relevant provisions of law including, without any intention of excluding other rights and powers, Rev. Code Wash. (ARCW) § 11.94.100 and Texas Probate Code §§499-501.

This durable power of attorney is not extinguished and shall not affected by subsequent incapacity of the principals except as provided the Washington and Texas Probate Codes. Specifically the Grantors give to Charles Edward Lincoln, III, and/or Peyton Yates Freiman full authority to act regarding the following:

**(1) *PROPERTY SUBJECT TO DURABLE POWER OF ATTORNEY.* --Unless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in real, movable, or intangible property owned by the principal, including, without limitation, Herman Aldana's & Olga Aldana's (hereinafter "the principals") interest in all real property, including but not limited to their homestead real property located at 8909 86th Avenue Northwest, Gig Harbor, WA 98332; all personal property, tangible or intangible; all property held in any type of joint tenancy, including a tenancy in common, joint tenancy with right of survivorship, or a tenancy by the entirety; all property over which the principal holds a general, limited, or special power of appointment; all claims, complaints, or causes of action, choses in action; and all other contractual or statutory rights**

*DURABLE POWER OF ATTORNEY GRANTED BY HERMAN ALDANA and OLGA ALDANA to CHARLES EDWARD LINCOLN III and/or PEYTON YATES FREIMAN to act as their agent(s) or attorney(s)-in-fact*

1

or elections, including, but not limited to, any rights or elections in any probate or similar proceeding to which the principal is or may become entitled.

(2) Except as otherwise limited by this section, by other applicable law, or by any specific terms of the durable power of attorney itself or Washington or Texas case law construing the same, Charles Edward Lincoln, III, acting as agent or attorney in fact for Herman & Olga Aldana, has full authority to perform, without prior court approval, every act authorized and specifically enumerated in the durable power of attorney. Such authorization may include, except as otherwise limited in this section:

A. The authority to execute stock powers or similar documents on behalf of the principal and delegate to a transfer agent or similar person the authority to register any stocks, bonds, or other securities either into or out of the principals' or nominee's name.

B. The authority to convey or mortgage homestead property. Since the principals are married and fully sui juris at the time of the execution of this Durable Power, the attorney in fact may not mortgage or convey homestead property without joinder of both spouses as principal or each spouse's legal guardian.

Joinder by a spouse may be accomplished by the exercise of authority in a subsequent, separate, and specifically executed durable power of attorney executed by the joining spouse, and either spouse may appoint the other as his or his attorney in fact.

The powers given to the attorney in fact, specific to this instrument, outside of what is outlined in the statutes themselves, will include:

In connection with an action or litigation, perform any lawful act the principal could perform.

This power of attorney is not to limit, and is in fact intended to expand and supplement the assignments of rights and powers made to Charles Edward Lincoln III from HERMAN & OLGA ALDANA relating to the property and all claims and rights and obligations incident thereto which Herman and Olga Aldana have previously and separately transferred by Warranty Deed, and their Assigment of Rights and

Obligations including but not limited to all rights and obligations relating to any notes secured by or contracts relating to the payment of notes secured by the property located at **8909 86th Avenue Northwest, Gig Harbor, WA 98332** as CLAIMS AND LITIGATION

This POA is being given specifically in regards to litigation, and is offered as a declaration as such. Charles Edward Lincoln III and/or Peyton Yates Freiman has authority by and through this document along with the corresponding Assignment of Rights coupled with a Warranty Deed to file and sign legal documents with the expressed consent of HERMAN & OLGA ALDANA with appearing in court in his stead if necessary.

Charles Edward Lincoln III, and/or Peyton Yates Freiman are hereby given the authority through this document, along with the combined and supplemental documents mentioned earlier, to commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as our Agent shall deem proper.

## PERSONAL AND FAMILY MAINTENANCE

To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as our Attorney-in-Fact and Agent with Durable Power of Attorney shall deem proper.

This power of attorney is effective immediately and shall not be affected by the subsequent disability or death of either granting party. No third party shall ever be held liable for respecting Charles Edward Lincoln's exercise (or his successor agent Peyton Yates Freiman's exercise) of this power of attorney unless such third party has actually received a copy of the principals' express revocation of this power of attorney. Any revocation of this power of attorney shall be executed in a manner of equal formality and dignity to the present document, and must be actually delivered to and received by Charles Edward Lincoln III or his successor agent Peyton Yates Freiman with at least 45 calendar days' between delivery and effective date of revocation.

In the event of the death or disability of Charles Edward Lincoln, III, Peyton Yates Freiman shall act as sole successor agent with power of attorney for 180 days,

or until another agent with Power of Attorney is chosen and appointed by the principals Herman & Olga Aldana. Disability shall be defined as sickness requiring hospitalization for more than 5 days, or any other circumstance which renders Lincoln unable to perform his duties for more than 5 consecutive days.

The agent with power of attorney shall at all times be entitled to advance payment or immediate reimbursement for all his reasonably necessary expenses incurred in the execution of his duties, including all travel and hotel bills for time away from Austin, Texas, spent solely and exclusively on the performance of duties as agent or attorney in fact for principals herein.

HERMAN & OLGA ALDANA, in order to save costs and simplify the administration of the rights conferred by this Power of Attorney, and consistent with all its purposes, do hereby waive both common law and statutory duties of accounting and fiduciary reporting in regard to their designation of Charles Edward Lincoln, III, and/or Peyton Yates Freiman and (without any express or implied limitation) they both specifically waive the requirements of the Standards of Care in Washington Statutes regarding or relating to fiduciary status and duty to account.

## REVOCATION OF ANY AND ALL PREVIOUS AGENCIES OR POWERS OF ATTORNEY GRANTED TO ANY PERSON OR ENTITY

This POA supersedes and revokes any previous sign Power of Attorney between HERMAN & OLGA ALDANA and any other party, rendering those previous agreements null and void from the signing date of this document.

HERMAN & OLGA ALDANA, the grantors of this POA reserve the right to revoke it should he deem it necessary at any time, upon 45 days written notice as specified above. This durable power of attorney is and shall not affected by subsequent incapacity of the principal except as provided in the laws of Washington and/or Texas.

Done and executed at 1928 Fletcher Avenue in South Pasadena, Los Angeles County, California on this the 10th day of January, 2010.


_____

**HERMAN ALDANA**
**1421 HIDDEN SPRINGS DR.**
**CORONA, CA 92881-6705**

---

*DURABLE POWER OF ATTORNEY GRANTED BY HERMAN ALDANA and OLGA ALDANA to*
*CHARLES EDWARD LINCOLN III and/or PEYTON YATES FREIMAN to act as their agent(s) or*
*attorney(s)-in-fact*

_Olga Aldana_

**OLGA ALDANA**
**1421 HIDDEN SPRINGS DR.**
**CORONA, CA 92881-6705**



State of California, County of _Los Angeles_
Subscribed and sworn to (or affirmed) before me
on this _10_ day of _January_, 20_10_,
by _Olga Aldana And Herman Aldana_
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature: _Sue H_

Sue Hasseler,
N.P.,C.N.S.A.,T.E.A.
(626) 485-7606
Comm. Exp. 01-01-2015

## NOTARY'S JURAT

Before me, on this the ___ day of January, 2010, HERMAN & OLGA ALDANA appeared in person and, after presenting sufficient legal identification, did then and there verify, execute, and acknowledge this document, and having been duly sworn on their oaths they did then and there acknowledge the above-and-foregoing Durable Power of Attorney freely and with full understanding of the full breadth and extent of powers and responsibilities transferred thereby.

_____
Notary Public, State of California
Los Angeles County

_____
Printed Name of Notary

_____
My Commission Expires

*DURABLE POWER OF ATTORNEY GRANTED BY HERMAN ALDANA and OLGA ALDANA to CHARLES EDWARD LINCOLN III and/or PEYTON YATES FREIMAN to act as their agent(s) or attorney(s)-in-fact*

5

Business address and telephone of notary on date of execution of this document.

*DURABLE POWER OF ATTORNEY GRANTED BY HERMAN ALDANA and OLGA ALDANA to*   6
*CHARLES EDWARD LINCOLN III and/or PEYTON YATES FREIMAN to act as their agent(s) or*
*attorney(s)-in-fact*

## DURABLE POWER OF ATTORNEY

Pursuant to CALIFORNIA PROBATE CODE SECTIONS 4400 Prob. - 4465 Prob., and also pursuant to TEXAS PROBATE CODE §§491-509, DENNIS & MILENNE DELEON grant Durable Power of Attorney, and do hereby designate and appoint CHARLES EDWARD LINCOLN III, whose phone number is 1-512-968-2500, to act and serve as their agent and attorney-in-fact, to do everything concerning their real property and all claims or obligations arising from any contract, deed, or right incident of title to or credit therefrom derived, to exactly the same extent which they might do. Specifically, Dennis & Milenne DeLeon have assigned to them all their assignable rights, and by this Durable Power of Attorney do confirm and augment his power to cover any rights of theirs which are unassignable for any reason as a matter of law, and Dennis & Milenne DeLeon specifically authorize Charles Edward Lincoln, III, acting as their agent or attorney in fact, to appear pro se, in propia persona, in Court as legal owner of their real property in and concerning all rights arising or incident thereto, including the right to contest claims and encumbrances on their property, pursuant all relevant provisions of law including, without any intention of excluding other rights and powers, California Probate Code §§ 4400-4465 and Texas Probate Code §§499-501. This durable power of attorney is and shall not affected by subsequent incapacity of the principals except as provided the California and Texas Probate Codes.  Specifically the Grantors give authority regarding the following:

**(1)  *PROPERTY SUBJECT TO DURABLE POWER OF ATTORNEY.* --Unless otherwise stated in the durable power of attorney, the durable power of attorney applies to any interest in real, movable, or intangible property owned by the principal, including, without limitation, Dennis DeLeon's & Milenne DeLeon's (hereinafter "the principals") interest in all real property, including but not limited to their homestead real property located at 1928 Fletcher Avenue in South Pasadena; all personal property, tangible or intangible; all property held in any type of joint tenancy, including a tenancy in common, joint tenancy with right of survivorship, or a tenancy by the entirety; all property over which the principal holds a general, limited, or special power of appointment; all claims, complaints, or causes of action, chooses in action; and all other contractual or statutory rights or elections, including, but not limited to, any rights or elections in any probate or**

similar proceeding to which the principal is or may become entitled.

(2) Except as otherwise limited by this section, by other applicable law, or by any specific terms of the durable power of attorney itself or California or Texas case law construing the same, Charles Edward Lincoln, III, acting as agent or attorney in fact for Dennis & Milenne DeLeon, has full authority to perform, without prior court approval, every act authorized and specifically enumerated in the durable power of attorney. Such authorization may include, except as otherwise limited in this section:

A. The authority to execute stock powers or similar documents on behalf of the principal and delegate to a transfer agent or similar person the authority to register any stocks, bonds, or other securities either into or out of the principals' or nominee's name.

B. The authority to convey or mortgage homestead property. Since the principals are married and fully sui juris at the time of the execution of this Durable Power, the attorney in fact may not mortgage or convey homestead property without joinder of both spouses as principal or each spouse's legal guardian.

Joinder by a spouse may be accomplished by the exercise of authority in a subsequent, separate, and  specifically executed durable power of attorney executed by the joining spouse, and either spouse may appoint the other as his or his attorney in fact.

The powers given to the attorney in fact, specific to this instrument, outside of what is outlined in the statutes themselves, will include:

In connection with an action or litigation, perform any lawful act the principal could perform.

This power of attorney is not to limit, and is in fact intended to expand and supplement the assignments of rights and powers made to Charles Edward Lincoln III from DENNIS & MILENNE DELEON relating to the property and all claims and rights and obligations incident thereto which Dennis and Milenne DeLeon have previously and separately transferred by Warranty Deed, and their Assignment of Rights and Obligations including but not limited to all rights and obligations relating to any notes secured by or

*Grant of Agency and Durable Power of Attorney to Charles Edward Lincoln*          2

contracts relating to the payment of notes secured by the property located at 1928 Fletcher Avenue, South Pasadena, California 91030.

## CLAIMS AND LITIGATION

This POA is being given specifically in regards to litigation, and is offered as a declaration as such. Charles Edward Lincoln III has authority by and through this document along with the corresponding Assignment of Rights coupled with a Warranty Deed to file and sign legal documents with the expressed consent of DENNIS & MILENNE DELEON with appearing in court in his stead if necessary.

Charles Edward Lincoln III is given the authority through this document, along with the combined and supplemental documents mentioned earlier, to commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as our Agent shall deem proper.

## PERSONAL AND FAMILY MAINTENANCE

To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as our Attorney-in-Fact and Agent with Durable Power of Attorney shall deem proper.

This power of attorney is effective immediately and shall not be affected by the subsequent disability or death of either granting party. No third party shall ever be held liable for respecting Charles Edward Lincoln's exercise (or his successor agent's exercise) of this power of attorney unless such third party has actually received a copy of the principals' express revocation of this power of attorney. Any revocation of this power of attorney shall be executed in a manner of equal formality and dignity to the present document, and must be actually delivered to and received by Charles Edward Lincoln III or his successor agent with at least 45 calendar days' between delivery and effective date of revocation.

In the event of the death or disability of Charles Edward Lincoln, III, Peyton Yates Freiman shall act as successor agent with power of attorney for 180 days, or until another agent with Power of Attorney is chosen and appointed by the principals Dennis & Milenne DeLeon. Disability shall be defined as sickness requiring hospitalization for more than 5 days, or any other circumstance which renders Lincoln unable to perform his duties for more than 5 consecutive days.

The agent with power of attorney shall at all times be entitled to advance payment or immediate reimbursement for all his reasonably necessary expenses incurred in the execution of his duties, including all travel and hotel bills for time away from Austin, Texas, spent solely and exclusively on the performance of duties as agent or attorney in fact for principals herein.

DENNIS & MILENNE DELEON, in order to save costs and simplify the administration of the rights conferred by this Power of Attorney, and consistent with all its purposes, do hereby waive both common law and statutory duties of accounting and fiduciary reporting in regard to their designation of Charles Edward Lincoln, III, and (without any express or implied limitation) they both specifically waive the requirements of the Standards of Care in California Statutes regarding or relating to fiduciary status and duty to account.

## REVOCATION OF ANY AND ALL PREVIOUS AGENCIES OR POWERS OF ATTORNEY GRANTED TO ANY PERSON OR ENTITY

This POA supersedes and revokes any previous sign Power of Attorney between DENNIS & MILENNE DELEON and any other party, rendering those previous agreements null and void from the signing date of this document.

DENNIS & MILENNE DELEON, the grantors of this POA reserve the right to revoke it should he deem it necessary at any time. This durable power of attorney is and shall not affected by subsequent incapacity of the principal except as provided in the laws of California and/or Texas.

Done and executed in South Pasadena, Los Angeles County, California on this the _10th_ day of January 2010.

_Milenne deleon_                    _DeLeon_

**Grant of Agency and Durable Power of Attorney to Charles Edward Lincoln**      4

GRANTOR, MILENNE DELEON
1928 Fletcher Avenue
South Pasadena, California 91030

GRANTOR, DENNIS DELEON 1928
1928 Fletcher Avenue
South Pasadena, California 91030



State of California, County of Los Angeles
Subscribed and sworn to (or affirmed) before me
on this 10 day of January, 20 10,
by Milenne Deleon And Dennis Deleon
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature: _____

Sue Hasseler,
N.P., C.N.S.A., T.E.A.
(626) 485-7606
Comm. Exp. 01-01-2013



## NOTARY'S JURAT

Before me, on this the _____ day of January, 2010 DENNIS & MILENNE DELEON appeared in person before me to verify, execute, and acknowledge this document, and having been duly sworn on their oaths they did then and there acknowledge the above-and-foregoing Durable Power of Attorney freely and with full understanding of the powers and responsibilities transferred thereby.

_____

**Notary Public, State of California**
**Los Angeles County**

_____

Printed Name of Notary

_____

My Commission Expires

_____

Business address and telephone of notary on date of execution of this document.

*Grant of Agency and Durable Power of Attorney to Charles Edward Lincoln*      6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C:

## *"Assignments of Rights and Obligations*
## *to Charles E. Lincoln III"*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 1 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

## ASSIGNMENT & ASSOCIATED RIGHTS IN NOTES & OBLIGATIONS

On this the 12th day of October, 2009, Dennis Deleon, acting jointly and in concert and agreement with his wife Milenne Deleon, grantors, whose address is: 1928 Fletcher Avenue, South Pasadena, California 91030, executed this Assignment of Rights to grantee Charles Edward Lincoln, III, for the purpose of executing this warranty deed.

Wherefore, by all to whom this document may come, let it be known that said grantors, assignors, transferors, Dennis and Milenne Deleon ---for and in consideration of the sum of $25.00 (twenty-five and no/100 dollars) and other good and valuable considerations from said assignee and transferee Lincoln, the receipt and sufficiency of which is hereby acknowledged---have granted (and did on May 5, 2009, actually deed, grant, sell, and transfer) unto Charles Edward Lincoln, and do hereby now confirm the sale and transfer of all of their contractual rights, equitable interests, and statutory claims to Lincoln as Grantee.  Grantors have also specifically assigned and transferred all other legal claims of whatever origin or description, arising from, concerning, or touching upon those certain lots or parcels situated in the Town of South Pasadena, County of Los Angeles, California more commonly known as 1928 Fletcher Avenue, South Pasadena, CA, but formally and fully described as Lots 24 and 25 as set forth in bold print below.

Furthermore, without any express or implied limitation whatsoever, grantors Dennis and Milenne Deleon have specifically assigned, granted, and transferred all of their statutory, legal, equitable, and contractual interests in the notes, claims conveying, delivering, granting, and transferring all their legal rights, title, and equitable interests in the herein-described land or real estate, situated, lying and being located in The Town of South Pasadena, County of Los Angeles, California as well as the obligations to which they granted or contractually agreed to undertake with any party arising from and associated with the following described land or real estate (being two lots), situated in Los Angeles county, California:

**LOT 29 OF THE WEST TRACT, IN THE CITY OF SOUTH PASSADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 166 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

## WARRANTY DEED CONFIRMED

And said grantors, assignors, transferors Dennis and Milenne Deleon, do hereby confirm and reaffirm that they, by separate document, have fully and irrevocably deeded, granted, transferred, and warranted unto Charles Edward Lincoln, III, all of their legal and equitable rights, title, and interest in the land and real estate (being two lots 24 and 25, more commonly known as 1928 Fletcher Avenue in the Town of South Pasadena as described in the bold print paragraphs above), as well as their claims to and arising from any and all notes, contracts, and obligations which he and she, together, granted or contractually agreed to with respect to any party to Charles Edward Lincoln, III, to have and to hold, from this day forward, without limitation or qualification whatsoever.

In witness whereof, grantor, assignor and transferor have set unto the two grantor's hand and seal the day of the above-and-foregoing quite claim deed, to wit 12th day of October 2009.

Signed, sealed and delivered in our presence:

_Mkenne deleon_

GRANTOR, MILENNE DELEON
1928 Fletcher Avenue
South Pasadena, California 91030

_Dennis Deleon_

GRANTOR, DENNIS DELEON
1928 Fletcher Avenue
South Pasadena, California 91030

## WITNESSES & NOTARY

_Olga O. Aldana_

1st Witness Signature

_Olga Orosa Aldana_

1st Witness Name

*Assignment and Transfer of Claims, Interests, and Rights to Charles Edward Lincoln*   2

_1421 Hidden Springs DR_
1st Witness Address

_Corona  CA 92881_
1st Witness City, State and Zip

_H. Sallew_
2nd Witness Signature

_Herman Salinas Aldana_
2nd Witness Name

_1421 Hidden Springs DR_
2nd Witness Address

_Corona  CA, 92881_
2nd Witness City, State and Zip

### *NOTARY'S JURAT*

The above-and-forgoing Assignment of Associated Rights in Notes and Obligations from Grantors Dennis Deleon and Milenne Deleon to Grantee Charles Edward Lincoln, III, was executed and acknowledged personally before me on this Monday the 12th day of October, 2009

NOTARY'S OFFICIAL SEAL HERE BELOW:

```
MARIA G. ALVAREZ
Commission # 1656639
Notary Public - California
Los Angeles County
My Comm. Expires Apr 7, 2010
```

_Maria g Alvarez_
Notary Public, State of California

_Maria g Alvarez_
Printed Name

_April 7, 2010_
My Commission Expires

*Assignment and Transfer of Claims, Interests, and Rights to Charles Edward Lincoln*     3

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of los Angeles

On October 12, 2009 before me, Maria G Alvarez, Notary Public,

*Date* — *Here Insert Name and Title of the Officer*

personally appeared MILENNE DELEON and DENNIS DELEON

*Name(s) of Signer(s)*

---

MARIA G. ALVAREZ
Commission # 1656639
Notary Public - California
Los Angeles County
My Comm. Expires Apr 7, 2010

*Place Notary Seal Above*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Signature of Notary Public*

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: Assignment and Associated Rights in Notes and Obligation

Document Date: October 12, 2009                                   Number of Pages: 3 pgs

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

_____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

_____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT D:

## *"Notice of Sale of 1928 Fletcher Ave."*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 1 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE CO

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE CO
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

The following copy of the original of which was filed for record on 08/13/2009 in the office of the County Recorder of the County set forth below is sent to you in as much as an examination of the title of the trust property shows you may have an interest in the Trustee's Sale Proceedings.

CALIFORNIA RECONVEYANCE COMPANY, Trustee

---

Trustee Sale No. 437896CA Loan No. 0702655051 Title Order No. 185039

# IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $17,063.16 as of 08/12/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the above paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.



Trustee Sale No. 437896CA   Loan No. 0702655051   Title Order No. 185039

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:  JPMorgan Chase Bank, National Assocation at 7301 BAYMEADOWS WAY  JACKSONVILLE FL 32256 (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 11/15/2005, executed by DENNIS DELEON AND MILENNE DELEON, HUSBAND AND WIFE, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 11/18/2005, Book , Page , Instrument 05 2804752 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 5321-038-012 Situs: 1928 FLETCHER AVE, , SOUTH PASADENA, CA 91030 Including the note(s) for the sum of $820,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 05/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2923.5.

DATE:  08/12/2009

California Reconveyance Company, as Trustee

Original document is signed

| CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. |

Trustee Sale No. 437896CA   Loan No. 0702655051   Title Order No. 185039

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Assocation at 7301 BAYMEADOWS WAY  JACKSONVILLE FL 32256 (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 11/15/2005, executed by DENNIS DELEON AND MILENNE DELEON, HUSBAND AND WIFE, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 11/18/2005, Book , Page , Instrument 05 2804752 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 5321-038-012 Situs: 1928 FLETCHER AVE, , SOUTH PASADENA, CA 91030 Including the note(s) for the sum of $820,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 05/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2923.5.

DATE: 08/12/2009

California Reconveyance Company, as Trustee

Original document is signed

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE CO

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE CO
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800 892-6902
(818)775-2258 (Fax)

The following copy of the original of which was filed for record on
08/13/2009 in the office of the County Recorder of the County set
forth below is sent to you in as much as an examination of the title
of the trust property shows you may have an interest in the
Trustee's Sale Proceedings.

CALIFORNIA RECONVEYANCE COMPANY, Trustee

---

Trustee Sale No. 437896CA   Loan No. 0702655051   Title Order No. 185039

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

**This amount is $17,063.16 as of 08/12/2009 and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the above paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.



California Reconveyance Company
PO Box 9029
Temecula, CA 92589-9029



7113 8257 1473 5581 6543

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Correspondence to:*
California Reconveyance Company
9200 Oakdale Avenue
Mail Stop N110612
Chatsworth, CA 91311

DENNIS DELEON
1928 FLETCHER AVE
SOUTH PASADENA, CA 91030-4625

20090821-59
100CA



1177-v7

An important message from the Federal Trade Commission

# A note to Homeowners



Facing foreclosure? Scammers are targeting people having trouble paying their mortgages. Some claim to be able to "rescue" homeowners from foreclosures, while others promise loan modifications - for a fee. The **Federal Trade Commission**, the nation's consumer protection agency, wants you to know how to avoid scams that could make your housing situation go from bad to worse.

## Don't Get Hit by a Pitch.

*"We can stop your foreclosure!"*
*"97% success rate!"*
*"Guaranteed to save your home!"*

These kinds of claims are the tell-tale signs of a foreclosure rip-off. Steer clear of anyone who offers an easy out.

## Don't Pay for a Promise.

Don't pay any business, organization, or person who promises to prevent foreclosure or get you a new mortgage. These so-called "foreclosure rescue companies" claim they can help save your home, but they're out to make a quick buck. Some may request hefty fees in advance - and then stop returning your calls. Others may string you along before disclosing their charges. Cut off all dealings if someone insists on a fee.

## Send Payments Directly.

Some scammers offer to handle financial arrangements for you, but then just pocket your payment. Send your mortgage payments ONLY to your mortgage servicer.

## Don't Pay for a Second Opinion.

Have you applied for a loan modification and been turned down?

## Imitations = Frustrations.

Some con artists use names, phone numbers, and websites to make it look like they're part of the government. If you want to contact a government agency, type the web address directly into your browser and look up any address you aren't sure about. Use phone numbers listed on agency websites or in other reliable sources, like the Blue Pages in your phone directory. Don't click on links or open any attachments in unexpected emails.

## Talk to a HUD-Certified Counseling Agency - For Free.

If you're having trouble paying your mortgage or you've already gotten a delinquency notice, free help is a phone call away. Call **1-888-995-HOPE** for free personalized advice from housing counseling agencies certified by the U.S. Department of Housing and Urban Development (HUD). This national hotline - open 24/7 - is operated by the Homeownership Preservation Foundation, a nonprofit member of the HOPE NOW Alliance of mortgage industry members and HUD-certified counseling agencies. For free guidance online, visit

Federal Trade Commission
ftc.gov/MoneyMatters

Never pay for a "second opin    ."          **www.makinghor    ffordable.gov.**

Call

# 1-888-995-HOPE

for free personalized guidance from housing counseling agencies certified
by the U.S. Department of Housing and Urban Development. The
Homeowner's HOPE™ Hotline - open 24/7 - is operated by the
Homeownership Preservation Foundation, a nonprofit member of the
HOPE NOW Alliance of mortgage industry members and
HUD-certified counseling agencies. Or visit

## www.hopenow.com

For Free information on the President's plan to help homeowners, visit

# www.makinghomeaffordable.gov





RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE CO

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE CO
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA  91311
800 892-6902
(818)775-2258 (Fax)

The following copy of the original of which was filed for record on
08/13/2009 in the office of the County Recorder of the County set
forth below is sent to you in as much as an examination of the title
of the trust property shows you may have an interest in the
Trustee's Sale Proceedings.

CALIFORNIA RECONVEYANCE COMPANY, Trustee

---

<u>Trustee Sale No. 437896CA</u>   Loan No. 0702655051   Title Order No. 185039

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**<u>IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION</u>, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $17,063.16 as of 08/12/2009 and will increase until your account becomes current.**

**While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.**

**Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).**

**Following the expiration of the time period referred to in the above paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.**



Trustee ⎯ e No. 437896CA    Loan No. 0702655051    T⎯ ⎯ Order No. 185039

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: JPMorgan Chase Bank, National Assocation at 7301 BAYMEADOWS WAY  JACKSONVILLE FL 32256 (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 11/15/2005, executed by DENNIS DELEON AND MILENNE DELEON, HUSBAND AND WIFE, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK, FA, as Beneficiary Recorded 11/18/2005, Book , Page , Instrument 05 2804752 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 5321-038-012 Situs: 1928 FLETCHER AVE, , SOUTH PASADENA, CA 91030 Including the note(s) for the sum of $820,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 05/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2923.5.

**DATE:  08/12/2009**

**California Reconveyance Company, as Trustee**

Original document is signed

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# California Reconveyance Company
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800-892-6902

Accompanying this is a statutory notice required by the law of the state in which the real property is located to initiate a foreclosure against the real property. You should carefully review the notice and contact California Reconveyance Company at 800-892-6902 to discuss the amount necessary to reinstate or pay off your loan.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.



California Reconveyance Company
PO Box 9029
Temecula, CA 92589-9029



7113 8257 1473 5581 6550

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Correspondence to:*
California Reconveyance Company
9200 Oakdale Avenue
Mail Stop N110612
Chatsworth, CA 91311

MILENNE DELEON
1928 FLETCHER AVE
SOUTH PASADENA, CA 91030-4625

20090821-59
100CA

An important message from the Federal Trade Commission

# A note to Homeowners



Facing foreclosure? Scammers are targeting people having trouble paying their mortgages. Some claim to be able to "rescue" homeowners from foreclosures, while others promise loan modifications - for a fee. The **Federal Trade Commission**, the nation's consumer protection agency, wants you to know how to avoid scams that could make your housing situation go from bad to worse.

## Don't Get Hit by a Pitch.

*"We can stop your foreclosure!"*
*"97% success rate!"*
*"Guaranteed to save your home!"*

These kinds of claims are the tell-tale signs of a foreclosure rip-off. Steer clear of anyone who offers an easy out.

## Don't Pay for a Promise.

Don't pay any business, organization, or person who promises to prevent foreclosure or get you a new mortgage. These so-called "foreclosure rescue companies" claim they can help save your home, but they're out to make a quick buck. Some may request hefty fees in advance - and then stop returning your calls. Others may string you along before disclosing their charges. Cut off all dealings if someone insists on a fee.

## Send Payments Directly.

Some scammers offer to handle financial arrangements for you, but then just pocket your payment. Send your mortgage payments ONLY to your mortgage servicer.

## Don't Pay for a Second Opinion.

ave you applied for a loan modification and been turned down?

## Imitations = Frustrations.

Some con artists use names, phone numbers, and websites to make it look like they're part of the government. If you want to contact a government agency, type the web address directly into your browser and look up any address you aren't sure about. Use phone numbers listed on agency websites or in other reliable sources, like the Blue Pages in your phone directory. Don't click on links or open any attachments in unexpected emails.

## Talk to a HUD-Certified Counseling Agency - For Free.

If you're having trouble paying your mortgage or you've already gotten a delinquency notice, free help is a phone call away. Call **1-888-995-HOPE** for free personalized advice from housing counseling agencies certified by the U.S. Department of Housing and Urban Development (HUD). This national hotline - open 24/7 - is operated by the Homeownership Preservation Foundation, a nonprofit member of the HOPE NOW Alliance of mortgage industry members and HUD-certified counseling agencies. For free guidance online, visit



Federal Trade Commission
ftc.gov/MoneyMatters

Never pay for a "second opini    "          **www.makinghon    ffordable.gov**.

Call

# 1-888-995-HOPE

for free personalized guidance from housing counseling agencies certified by the U.S. Department of Housing and Urban Development. The Homeowner's HOPE™ Hotline - open 24/7 - is operated by the Homeownership Preservation Foundation, a nonprofit member of the HOPE NOW Alliance of mortgage industry members and HUD-certified counseling agencies. Or visit

# www.hopenow.com

For Free information on the President's plan to help homeowners, visit

# www.makinghomeaffordable.gov





RECORDING REQUESTED BY
CALIFORNIA RECONVEYANCE CO

AND WHEN RECORDED MAIL TO

CALIFORNIA RECONVEYANCE CO
9200 Oakdale Avenue
Mail Stop: CA2-4379
Chatsworth, CA 91311
800 892-6902
(818)775-2258 (Fax)

The following copy of the original of which was filed for record on
08/13/2009 in the office of the County Recorder of the County set
forth below is sent to you in as much as an examination of the title
of the trust property shows you may have an interest in the
Trustee's Sale Proceedings.

CALIFORNIA RECONVEYANCE COMPANY, Trustee

---

Trustee Sale No. 437896CA   Loan No. 0702655051   Title Order No. 185039

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $17,063.16 as of 08/12/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the above paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.



Trustee S..e No. 437896CA   Loan No. 0702655051   Ti... Order No. 185039

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:  JPMorgan Chase Bank, National Assocation at 7301 BAYMEADOWS WAY  JACKSONVILLE FL 32256 (877) 926-8937.

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.  NOTICE IS HEREBY GIVEN THAT: CALIFORNIA RECONVEYANCE COMPANY is the duly appointed Trustee under a Deed of Trust dated 11/15/2005, executed by DENNIS DELEON AND MILENNE DELEON, HUSBAND AND WIFE, as trustor, to secure obligations in favor of WASHINGTON MUTUAL BANK,  FA, as Beneficiary Recorded 11/18/2005, Book , Page , Instrument 05 2804752 of official records in the Office of the Recorder of LOS ANGELES County, California, as more fully described on said Deed of Trust. APN: 5321-038-012 Situs: 1928 FLETCHER AVE, , SOUTH PASADENA, CA 91030 Including the note(s) for the sum of $820,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE 05/01/2009 INSTALLMENT OF PRINCIPAL AND INTEREST AND ALL SUBSEQUENT MONTHLY INSTALLMENTS OF PRINCIPAL AND INTEREST; PLUS ANY ADDITIONAL ACCRUED AND UNPAID AMOUNTS INCLUDING, BUT NOT LIMITED TO, LATE CHARGES, ADVANCES, IMPOUNDS, TAXES, HAZARD INSURANCE, ADMINISTRATIVE FEES, INSUFFICIENT AND PARTIAL RETURN CHECK FEES, STATEMENT FEES, AND OBLIGATIONS SECURED BY PRIOR ENCUMBRANCES.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of §2923.5.

**DATE:  08/12/2009**

**California Reconveyance Company, as Trustee**

<u>Original document is signed</u>

CALIFORNIA RECONVEYANCE COMPANY IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# California Reconveyance Company
### 9200 Oakdale Avenue
### Mail Stop: CA2-4379
### Chatsworth, CA 91311
### 800-892-6902

Accompanying this is a statutory notice required by the law of the state in which the real property is located to initiate a foreclosure against the real property. You should carefully review the notice and contact California Reconveyance Company at 800-892-6902 to discuss the amount necessary to reinstate or pay off your loan.

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT E:

## *"DeLeon Demand Letter to Chase Bank"*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 2 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT F:

*"Original WAMU Deed of Trust"*

*Plaintiff's Original Complaint for Quiet Title*
*CHARLES EDWARD LINCOLN III v. JP MORGAN CHASE, N.A.*
*et al., U.S. District Court, Central District of California*

- 1 -

*Charles Edward Lincoln III*
*Plaintiff, pro se*
*1928 Fletcher Avenue*
*South Pasadena, California 91030*

# ADJUSTABLE RATE NOTE
## (12-MTA Index - Payment and Rate Caps)

03-2257-070265505-1

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ___125%___ OF THE ORIGINAL AMOUNT (OR $__1,025,000.00__).  MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE.  A BALLOON PAYMENT MAY BE DUE AT MATURITY.

___November 15, 2005___          ___PASADENA___    ___California___
                                        (City)                    (State)

___1928 FLETCHER AVE, SOUTH PASADENA, CA 91030___
                            (Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $___820,000.00___ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ___Washington Mutual Bank, FA___. I will make all payments under this Note in form of cash, check or money order.  I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of __6.126__ %.  Thereafter until the first Change Date (as defined in Section 4 of this Note) I will pay interest at a yearly rate of __1.475__ %. The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, "payments" refer to Principal and interest payments only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I will make my monthly payments on ___1st___ day of each month beginning on ___January, 2006___, I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on ___December 1, 2035___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at ___9451 CORBIN AVE, NORTHRIDGE, CA 91324___
_____, or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $__2,820.16__, unless adjusted at an earlier time under Section 4(H) of this Note.

03-2257-070265505-1

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of ___January, 2006___, and on that day every month thereafter. Each such day is called a "Change Date".

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___Two & Eight-Tenths___ percentage points ___2.800___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___Ten & Five-Hundredths___ percentage points ___10.050___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer,

**(E) Payment Change Dates**

Effective every year commencing ___January 1, 2007___, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of this Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

03-2257-070265505-1

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on    the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will ad the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the  monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to __125%__ of the principal amount original borrowed.  In the event my unpaid Principal would otherwise exceed that __125%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I)  Required Full Monthly Payment**

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K)  Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then;  (a) any such loan charge shall be reduced by the amount

03-2257-070265505-1

necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**Miscellaneous Fees:** I understand that the Note Holder will also charge a return item charge in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. The current fee is $ __15.00__ . Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __Fifteen__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once of each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given the Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

03-2257-070265505-1

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the  Note or other loan document is acceptable to  Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver

03-2257-070265505-1

to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X_____
  DENNIS DELEON

 _____
  MILENNE DELEON

# Prepayment Fee Note Addendum

03-2257-070265505-1

This Note Addendum is made this __15th__ day of _____November, 2005_____ and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") in favor of _____Washington Mutual Bank, FA_____ (the "Lender") and dated as of even date herewith (the "Note").

This Note Addendum amends the provision in the Note regarding the Borrower's right to prepay as follows:

## BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. Any payment of principal, before it is due, is known as a "prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment." A prepayment of the full amount of the unpaid principal is known as a "full prepayment."

If I make a full prepayment, I may be charged a fee as follows:

If Noteholder receives a prepayment on or before the first anniversary of the date of the Note, the Prepayment Fee shall be equal to __TWO__ percent (__2.000__ %) of the original loan amount. Thereafter, prepayment of the Note shall be permitted without any Prepayment Fee.

The Prepayment Fee shall be payable upon a full prepayment, voluntary or involuntary, including but not limited to a prepayment resulting from Noteholder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty accrued but unpaid interest that has been added to principal.

When I make a full or partial prepayment I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

4367 (08-01)

03-2257-070265505-1

**NOTICE TO THE BORROWER**
    Do not sign this Note Addendum before you read it.  This Note Addendum provides for the payment of a Prepayment Fee if you wish to repay the loan prior to the date provided for repayment in the Note.


    By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.


X_____
  DENNIS DELEON


X_____
  MILENNE DELEON

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

# SECURITY INSTRUMENT COVER SHEET

03-2257-070265505-1

| Please print or type information |
| :--- |
| Document Title(s) (or transactions contained therein): |
| 1. Deed of Trust |

| Grantor/Trustor/Mortgagor(s) (Last name first, then first name and initials) |
| :--- |
| 1. DENNIS DELEON |
| 2. MILENNE DELEON |
| 3. |
| 4. |
| 5. ☐  Additional names on page _____ of document. |

| Grantee/Beneficiary/Mortgagee(s) |
| :--- |
| 1. Washington Mutual Bank, FA |

| Legal Description (abbreviated: i.e. lot, block, plat or section, township, range) |
| :--- |
| LOT 29 OF THE WEST TRACT, IN THE CITY OF SOUTH PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 166 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. |
| ☐  Additional legal is on page _____ of document. |

| Assessor's Property Tax Parcel/Account Number(s) | |
| :--- | :--- |
| 1. 5321-038-012 | 2. |
| 3. | 4. |

| This document prepared by: |
| :--- |
| ALMA R BARAJAS |
| 100 S. VINCENT |
| WEST COVINA, CA 91790 |

2636 (12-00)

.?

AFTER RECORDING RETURN TO:

Washington Mutual Bank, FA
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE MS156DPCA
GARDEN GROVE, CA 92841

——————————————— [Space Above This Line For Recording Data] ———————————————

EQUITY TITLE COMPANY LA0563149

# DEED OF TRUST

03-2257-070265505-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated _____ November 15, 2005 _____ , together with all Riders to this document.
**(B) "Borrower"** is _____ DENNIS DELEON AND MILENNE DELEON, HUSBAND AND WIFE _____

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is _____ Washington Mutual Bank, FA, a federal association _____ .
Lender is a _____ Bank _____ organized and existing under the laws of _____ United States of America _____ . Lender's address is _____ 400 East Main Street Stockton, CA 95290 _____ .
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is _____ CALIFORNIA RECONVEYANCE COMPANY _____ .
**(E) "Note"** means the promissory note signed by Borrower and dated _____ November 15, 2005 _____ .
The Note states that Borrower owes Lender _Eight Hundred Twenty Thousand & 00/100_

Dollars (U.S. $ _____ 820,000.00 _____ ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _____ December 1, 2035 _____ .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA
32838 (05-01)                              Page 1 of 17

03-2257-070265505-1

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] Other(s) [specify]

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds, whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

03-2257-070265505-1

grants and conveys to Trustee, in trust, with power of sale, the following described property located in   <u>Los Angeles</u>                 County, California:

LOT 29 OF THE WEST TRACT, IN THE CITY OF SOUTH PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 7 PAGE 166 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

which currently has the address of <u>1928 FLETCHER AVE</u>                          ,
                                                                                  [Street]

<u>       SOUTH PASADENA       </u> , California      <u>91030</u>      ("Property Address"):
               [City]                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one of more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

03-2257-070265505-1

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance of the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

03-2257-070265505-1

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

03-2257-070265505-1

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such polices shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in

03-2257-070265505-1

connection with any damage to such property, resulting from any cause or causes whatsoever, including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workmanlike manner if damaged to avoid further

03-2257-070265505-1

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or, entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

03-2257-070265505-1

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

03-2257-070265505-1

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is

less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by

Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note.) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the

03-2257-070265505-1

conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument,

03-2257-070265505-1

and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

03-2257-070265505-1

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the of the occurrence of and event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender or the Trustee (whether or not the Trustee is affiliated with Lender) may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

03-2257-070265505-1

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution. Trustee may destroy the Note and the Security Instrument three (3) years after issuance of a full reconveyance or release (unless directed in such request to retain them).

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

X_____
DENNIS DELEON

X_____
MILENNE DELEON

03-2257-070265505-1

———————————— (Space Below This Line For Acknowledgment) ————————————

State of  CALIFORNIA      )
             ) SS.
County of          )

On _____, before me, _____
_____, a Notary Public in and for the State of
California, personally appeared _____
_____
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

Witness my hand and official seal


Signature _____
Notary Public in and for the State of California

CALIFORNIA
32838 (05-01)         Page 17 of 17

**ADJUSTABLE RATE RIDER**
**(12-MTA Index - Payment and Rate Caps)**

03-2257-070265505-1

THIS ADJUSTABLE RATE RIDER is made this <u>15th</u> day of <u>November, 2005</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to <u>Washington Mutual Bank, FA</u> (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

<u>1928 FLETCHER AVE, SOUTH PASADENA, CA 91030</u>
(Property Address)

> THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN <u>125%</u> OF THE ORIGINAL AMOUNT (OR $<u>1,025,000.00</u>).  MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER.  A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of <u>6.126</u> %. Thereafter until the first Change Date (as defined in Section 4 of the Note) I will pay interest at a yearly rate of <u>1.475</u> %. The interest rate I will pay will thereafter change in accordance with Section 4 of the Note.
Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

32843 (11-01)                              **Page 1 of 5**

03-2257-070265505-1

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the _____1st_____ day of
_____January, 2006_____, and on that day every month thereafter.  Each such day
is called a "Change Date".

### (B) The Index

On each Change Date, my interest rate will be based on an Index.  The "Index" is the
Twelve-Month Average, determined as set forth below, of the annual yields on actively traded
United States Treasury Securities adjusted to a constant maturity of one year as published by the
Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates
(H.15)" (the "Monthly Yields").  The Twelve-Month Average is determined by adding together the
Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is
called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based
upon comparable information.  The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding
_____Two & Eight-Tenths_____ percentage points _2.800_ %
("Margin") to Current Index.  The Note Holder will then round the result of this addition to the
nearest one thousandth of one percentage point (0.001%).  Subject to the limits stated in Section
4(D) below, this rounded amount will be my new interest rate until the next Change Date.  In the
event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined.  The
new Margin will be the difference between the average of the old Index for the most recent three
year period which ends on the last date the Index was available plus the Margin on the last date
the old Index was available and the average of the new Index for the most recent three year
period which ends on that date (or if not available for such three year period, for such time as it is
available).  The difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than _10.050_ % ("Cap"), except that following any
sale or transfer of the property which secures repayment of this Note after the first interest rate
Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points
greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _____January 1, 2007_____, and on the same
date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the

32843 (11-01)                              **Page 2 of 5**

03-2257-070265505-1

amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate in effect 45 days prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 1/2% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments. For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a Principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to __125%__ of the principal amount original borrowed. In the event my unpaid Principal would otherwise exceed that __125%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 1/2% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the __FIFTH__ anniversary of the due date of the first monthly payment, and on that same day every __FIFTH__ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

32843 (11-01)                                   **Page 3 of 5**

03-2257-070265505-1

monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement , the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person)  without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to  Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the

32843 (11-01)                                    **Page 4 of 5**

03-2257-070265505-1

transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider. Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

X_____
DENNIS DELEON


X_____
MILENNE DELEON

**Washington Mutual**

## First Payment Reminder Notice

Loan Number:  03-2257-070265505-1

This notification provides instructions for making your first mortgage payment in the event that your mortgage loan closes in less than 30 days of your first payment due date, as indicated on your Promissory Note.

If your first payment is due within 30 days of your mortgage loan closing date, you will not receive a billing statement until your second payment is due or, if you have chosen the AutoPay option, your first AutoPay draft will not occur until your second payment.

Your payment is due on the scheduled date. Please mail your first payment to the address shown on your Promissory Note, or make your payment at any Washington Mutual Financial Center. It is important that payments only be brought to a Washington Mutual Financial Center authorized to accept mortgage payments. Other Washington Mutual offices will not be able to process your mortgage payment. For the location of the nearest Washington Mutual Financial Center, please call 1-800-756-8000, Option 5.

The full Principal & Interest or Principal, Interest, Taxes and Insurance payment amount is due on the first payment date. This full payment amount can be found on the Borrower Disbursement Authorization (form 1517).

By signing below, the borrower acknowledges receipt of this notification.

X_____
DENNIS DELEON

X_____
MILENNE DELEON

31397 (12-02)

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐.) | DEFENDANTS |
|---|---|
| Charles Edward Lincoln, III 603 Elmwood, Suite #6, Austin, Texas 78705<br>Telephone: 512-968-2500; Facsimile: 561-691-1423;<br>charles.lincoln@rocketmail.com<br>Alternative Address: 1928 Fletcher Avenue, South Pasadena CA 91030 | JP Morgan Chase, N.A.<br>California Reconveyance Company |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Charles Edward Lincoln, III 603 Elmwood, Suite #6, Austin, Texas 78705<br>Telephone: 512-968-2500; Facsimile: 561-691-1423;<br>charles.lincoln@rocketmail.com<br>Alternative Address: 1928 Fletcher Avenue, South Pasadena CA 91030 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. Sections 1981, 1982, 1983, 1988(a); 15 U.S.C. Section 1691 (Mortgage Fraud and Declaratory Judgment Re: Unconstitutional State Statute Cal Civ Code 2924

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty<br>☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent<br>☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☒ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

# CV10-00615

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
 ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
 ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
 ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| California Reconveyance Company has its principal places of business in Los Angeles County (Chatsworth); JP Morgan Chase has world headquarters in the borough of Manhattan, New York City, New York | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
 **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| 1928 Fletcher Avenue is located in South Pasadena in Los Angeles County | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date January 28, 2010

 **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 615 RGK (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division** | **[ ]  Southern Division** | **[ ]  Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY